GEORGE H. BARNEY v. CHARLES SCHERLING.

1. ATTACHMENTS: EVIDENCE, ON AN ISSUE OF DISPOSITION OF PROPERTY BY A DEBTOR WITH INTENT TO DEFRAUD CREDITORS.—On the trial of the issue, whether or not a debtor has disposed of his property with an intent to defraud creditors, it is admissible to show that the property disposed of was conveyed to the wife of the debtor, either by the debtor himself or some third person.

2. PRACTICE: INSTRUCTIONS TO JURY: TO BE CONSIDERED BY THE HIGH COURT OF ERRORS AND APPEALS, MUST BE EXCEPTED TO ON THE TRIAL, OR MADE GROUND OF MOTION FOR A NEW TRIAL.—Instructions to the jury are made a part of the record by statute, but the action of the Circuit Court in giving or refusing instructions will not be considered by the High Court of Errors and Appeals, unless an exception is taken on the trial to their being given or refused, or alleged as a ground of the motion for a new trial.

3. SAME: CASE IN JUDGMENT.—On the trial of this cause in the Circuit Court, certain instructions were given for defendant.    The instructions are set out at length

Barney *v.* Scherling.

in the record, but no objection or exception is shown to have been taken thereto, nor does the motion for a new trial allege that these instructions were erroneous. Held—That this court would not consider objections to the instructions.

4. PRACTICE: BILL OF EXCEPTIONS: TAKEN PENDING THE TRIAL, AND AFTER MOTIONS FOR A NEW TRIAL.—Bills of exceptions may be taken and signed pending the trial and before verdict, or they may be taken to the action of the court on motions for a new trial; one or both may be resorted to in the same case; each must stand on its own merits, and be considered with reference to the special grounds and reasons stated in them.

5. PRACTICE: MOTION FOR A NEW TRIAL: MUST STATE CAUSES UPON WHICH MOTION IS BASED.—The statute, Rev. Code, 504, article 166, requires that a party making a motion for a new trial, shall reduce to writing the reasons offered for said motion; and the Circuit Court, on the hearing of said motion, will consider only such written reasons.

6. ATTACHMENT: DEBTOR DISPOSING OF PROPERTY WITH INTENT TO DEFRAUD CREDITORS: FRAUDULENT INTENT: JURY TO DETERMINE.—Where a creditor sues out an attachment on the ground that his debtor is about to dispose of his property with intent to defraud his creditors, and the debtor traverses the ground, the question presented is one of fraudulent intent on the part of the debtor, and peculiarly appropriate to be determined by a jury.

7. ATTACHMENT: DAMAGES FOR WRONGFULLY SUING OUT: PROBABLE CAUSE.—Where an attachment is wrongfully sued out, and the jury so find, it is proper to find damages for the defendant. The question presented on such an issue, is not whether there was probable cause for suing out the attachment, but whether or not the attachment was wrongfully sued out.

ERROR to Circuit Court of Amite county. Hon. James M. Smiley, judge.

Plaintiff in error sued out an attachment against defendant in error. The affidavit for the attachment is made on the 25th of November, 1865, and states that "defendant has assigned or disposed of, or is about to assign or dispose of his property, or rights in action, or some part thereof, with intent to defraud his creditors, or give an unfair preference to some of them, or that he had converted, or is about to convert, his property into money, or evidences of debt, with intent to place it beyond the reach of his creditors." The causes alleged were traversed, a trial had, and a verdict for defendant, assessing his damages at $50.

Evidence for plaintiff.

Gayle testified that—Some time before issuance of attachment he and defendant were negotiating for a sale of the

property now levied on. Witness offered $2,500 (greenbacks) for the property. Defendant replied, he would take that amount, if he could purchase property in the town of Summit, Miss., as he desired to move there, that being a better place for business than where his property now was: and afterwards defendant went to Summit, and on his return told witness that he could get another place, and witness might have the property in his possession, it being the same levied on.

Nothing more occurred between witness and defendant until the evening of the 22d of November, when defendant told witness, it was perhaps best for them not to trade. Witness replied that he had made arrangements to purchase the property, and would be ready to pay and receive a deed by the 25th of November. To which defendant assented, and witness made his arrangements to pay. On the 24th of November, plaintiff asked witness if he had purchased defendant's property. He replied that he had, but that he had not paid for it. Witness would have paid on the 25th, if the attachment had not been sued out.

McDowell testified that—On the 22d of November, 1865, he called on defendant to purchase for plaintiff the property levied on, and offered $3,000, a part of which was to be paid by the note held on defendant. Defendant refused to take that sum, but said he would take $3,500 from plaintiff. Witness replied he could not give it. Defendant said, if he does not buy at that price, he will not get a cent of his claim or note.

Evidence for defendant.

A deed from Cowden and wife to Ann G. Scherling, dated Oct. 29, 1862, conveying the property attached.

Plaintiff objected to the introduction of this deed, and excepted.

A deed from defendant to F. C. Wren, dated April 5, 1861, conveying a slave, all his stock of carriages, harness, saddles, and stock of goods of every kind employed about his business, to secure said Wren as the security of defendant on a certain note to plaintiff for about $1,200; also as his security to Eliza

Cox for the sum of $500. The note intended to be secured by this deed is the one sued on in this action.

A deed from defendant to F. H. Sleeper, dated April 5, 1861, to secure the payment of $8,000 to Hansell, conveying two lots in the town of Liberty.

A deed from defendant to Sleeper to pay several debts including Hansell's, conveys all his stock of buggies, carriages, harness, leather, and material on hand of every kind, used in the saddlery, carriage, and harness business, accounts and account books for 1861 for merchandise sold—defendant to remain in possession of the goods, sell, employ workmen, and carry on his business, and pay over to Sleeper, to be applied in payment of the debts specified. The legal title to property to be in Sleeper, and defendant to be only his agent. This deed is dated April 5, 1861.

All the deeds were duly acknowledged and recorded.

Plaintiff objected generally to the introduction of these deeds, and excepted.

Wren testified that—He was defendant's security for a large amount, including the note sued on. Defendant had placed some $600 of claims, of which he had collected about $400, and paid over to Sleeper to pay defendant's debts.

Was intimate with defendant, familiar with his business, and has ever regarded him as an honest man. Had known father of defendant's wife for twelve years; he had always been in moderate circumstances, earning his living by his labor as a mechanic. So far as witness knew, defendant had assigned his property to pay his debts, as set forth in the deeds in evidence.

Henson testified that—He was a creditor of defendant for a large amount; had recently been paid a part, and satisfactory arrangement made as to the balance. The debt was for lumber used in building defendant's house, and for a tan-yard on the same tract.

Whittington.—That defendant had offered to exchange the place levied on for witness's place in town; soon found that they couldn't trade. Defendant requested witness to talk about the trade in town, so that plaintiff might be induced to give more

than he had offered.   The house and lot of defendant's levied on, and offered in exchange, was worth $3,500 to $4,000. That the father of defendant's wife was in moderate circumstances, not worth more than $1,500.

McKnight.—That he was a practising lawyer ; reasonable fee for defending this suit, $100.   Knows that father of defendant's wife is in very moderate circumstances.   Thinks that Whittington valued the house and lot of defendant too high.

Plaintiff, in rebuttal, introduced the following testimony :

Cowden testified that—He sold the lands levied on to defendant for $3,500, and the amount was paid him by defendant.

Morgan testified that—In a conversation between witness and defendant about the property levied on, defendant said he had plenty of Confederate money, and intended to buy property, and have the title made to his wife and children ; and if the Confederacy went down they would have something left them.

Bungart.—That he had erected the improvements on the land levied on, and defendant paid him for his work $1,000, and a lot in Liberty, a deed to which was introduced, dated 29th June, 1864, and specifies a consideration of $1,800.

Also a deed from Webb to defendant, dated December 11, 1855, conveying lot sold to Bungart.

The record recites that the " following instructions were given for plaintiff and defendant :

" That if it be shown from the proof or from circumstances disclosed by the testimony, that defendant was, at the time of suing out the attachment, disposing of his property with intent to defraud plaintiff, then the jury may find that the attachment was rightfully sued out.

" 1.  A debtor, even if in failing circumstances, may sell his property, if unmixed with fraud, and such sale of itself is not evidence of a fradulent intent.

" 2.  It is not sufficient for plaintiff only to prove that defendant was about to sell his property, but it must be proved, that such sale was about to be made, either with intent to defraud his creditors, or give an unfair preference to some of them, or to

Barney *v.* Scherling.

convert his property into money or evidences of debt with intent to place it beyond the reach of his creditors.

" 3. Fraud and fraudulent intent cannot be presumed, but must be proved.

" 4. Although the jury may believe that the property in negotiation between defendant and Gayle was and is the property of defendant, yet such ownership of defendant is not of itself sufficient to sustain the attachment without proof of the fraudulent intents, or some of them, as charged in the affidavit on which the attachment was sued out.

" 5. A debtor may make a fair sale of his property, and to pay debts, and such sale for such purpose, is not in law giving an unfair preference to some creditors over others.

" 6. Unless the jury believe from the evidence that defendant was about to dispose of his property, with the fraudulent intent and purposes, or some of them, mentioned in the affidavit of plaintiff, they must find that the attachment was wrongfully sued out, and may find such damages as have been proved.

" 7. The burden of proof is on the plaintiff, and unless he sustains his case by proof, they must find that the attachment was wrongfully sued out, although defendant had proved nothing."

No objections are shown by the record to have been made to the instructions.

Verdict for defendant, and damages $50 and costs, and judgment accordingly.

Plaintiff moved for a new trial for the following reasons :

1. Verdict contrary to law and evidence.

2. Verdict assessing damages contrary to law and evidence.

3. Because the court improperly admitted evidence to show that the title to the property levied on was in the wife of defendant, and not in him.

Motion overruled, and plaintiff excepted.

*Harris* and *Hurst*, for plaintiff in error, contended,

That if Barney was not to be benefited by the sale of Scherling's property, or if it was Scherling's intention to pay some other debt to the exclusion of Barney's, the right to proceed by

attachment would be as clear as it would if it had been intended to defeat Barney by a conversion of the property into money. The provisions of the Code, which enlarges the remedy by attachment for the prevention of fraud and injustice to creditors, would fall short of the object, if the transactions disclosed by this record, should escape its provisions. A recusant debtor, declining to pay, or to make any accommodation with his creditor, and offering his property for sale for cash, and that property the only available resource to the creditor, and threatening the creditor with the loss of his debts, fairly exposes himself to the proceeding by attachment.

Another view presents itself. The debtor has made a fraudulent settlement of a large portion of his property on his wife without consideration; he also made assignments of a large portion of his effects to part of his creditors who are not shown to possess claims higher than plaintiff in error. "An unfair preference" clearly means the exclusion of part from the benefit of the assignment, whose claims are as just and meritorious as those preferred. The statute clearly designed to give to creditors thus excluded the remedy by attachment. The law, as it stood prior to our statute, gives the right of a debtor to prefer any one or more of his creditors. This principle was fully recognized; and, however unfair the preference might be, there was no remedy, except in cases where some secret advantage was secured to part of the creditors. But now this doctrine is condemned by our law. Whether assignments preferring creditors, when actually consummated, will be held void in favor of the excluded creditors, remains to be decided; but that they furnish the ground for attachment, without regard to the question of fraudulent intent, is very clear. Unfair preference is of necessity the case of discrimination between creditors of the same grade, having no priority or recognized legal preference.

*G. R. Potter*, for defendant in error.

1. That the deed of Cowden to Ann G. Scherling was properly admitted as evidence. The property conveyed was the property levied on. The issue was, that defendant was about

to dispose of this property with intent to defraud his creditors. This evidence that the property was not his own, thus presenting a full answer to the charge.

2. That the instructions to the jury could not be considered by this court, because the record did not show that any objection had been made to them on the trial in the court below, nor was any exception taken or reserved, nor was any objection taken to them in the motion for a new trial. 36 Miss. R. 403 ; 35 Miss. R. 216.

3. The statute gives an attachment against the estate of a debtor when he is about to assign or dispose of his property with intent to defraud his creditors, or give an unfair preference to some of them. Our law permits preferences in such cases, and this statute, tacitly permitting the general practice, gives this remedy only where the preference is " unfair." The preference must be unfair ; but the law has nowhere defined what an unfair preference is. An insolvent may prefer or pay one creditor to the exclusion of another, and this has never been held to be unfair. The law does not require him to pay *pro rata*, but leaves the whole matter to his honest judgment. Whatever may have been the meaning of the legislature, it has not been expressed, and this court cannot legislate and declare, against the settled rules of law, what are unfair preferences in such cases. Burrill on Assignments, 108 *et seq.*, and note.

4. That the testimony did not show an intent to defraud creditors, to give an unfair advantage to them, or that defendant was converting his property into money to place it beyond reach of creditors.

HANDY, C. J., delivered the opinion of the court.

This was an attachment sued out by the plaintiff in error against the defendant, on a suggestion under oath, that the defendant was indebted to him in a specified sum of money, and that he " had assigned or disposed of, or was about to assign and dispose of, his property or rights in action, or some part thereof, with intent to defraud his creditors, or to give an unfair preference to some of them, or that he had converted, or

was about to convert, his property into money or evidences of debt, with intent to place it beyond the reach of his creditors." The defendant filed his plea in abatement, traversing the several averments of this affidavit; and upon that issue the verdict was for the defendant. The plantiff thereupon moved for a new trial, on grounds stated which will be hereafter noticed; that motion was overruled, and thereupon the plaintiff took his bill of exceptions, and brings the case here.

The grounds for the motion for a new trial, are: 1, because the verdict was contrary to law and evidence; 2, because the verdict assessing damages against the plaintiff was contrary to law and evidence; and 3, because the court allowed improper evidence to go to the jury—that the property levied on was the property of Anne G. Scherling and not of the defendant.

The first error assigned is the admission of the evidence offered by the defendant to show that the lands attached were the property of his wife.

On the trial, the defendant offered in evidence a deed for the lands attached, executed by one Cowden to Anne G. Scherling; the plaintiff objected to its introduction, and the objection was overruled. It does not appear by the record, nor is it now stated, on what ground that objection was based; and we can only regard the deed with reference to its relevancy and competency as evidence.

We consider it competent under the issue, and proper to be taken into view by the jury, upon the question of the alleged intent of the defendant to dispose of his property, including the lands embraced in this deed, in fraud of his creditors. It tended to show, in the first place, that the lands were the property of his wife; and hence that his effort to dispose of them, about the time the attachment was issued, was not for the purpose of disposing of *his* property to defraud his creditors. If the jury believed the conveyance to his wife to be *bonâ fide* and valid, and not made with intent to defraud his creditors, or to place the lands beyond their reach by having them conveyed to his wife, then it is clear that the evidence was directly relevant to the issue, whether he was about to dispose of *his* property with in-

Barney *v.* Scherling.

tent to defraud his creditors. But the evidence was likewise competent to be considered by them with reference to the validity of the deed, and it was for them to determine whether the conveyance to her was, or was not, made with a fraudulent intent towards his creditors. In the next place, the evidence was proper to be taken into consideration, as tending to show that the defendant was not attempting to dispose of his property in fraud of his creditors, because the lands were conveyed to his wife, and that was to some degree an impediment to their being subjected to the payment of his debts, and a reason why he should not convey them to defraud his creditors. In this view, the evidence was proper to be considered by the jury, who might give it such weight as they thought proper.

The second error assigned is that the court gave the first, third, fifth and sixth instructions asked by the defendant.

It is to be observed, that no objection was made on the trial to the granting of these instructions, nor was any exception taken on that ground. Nor was it alleged, as ground of the motion for a new trial, that these instructions, now alleged to be erroneous, were given. The case is brought here for review solely upon the ground that the court erred in overruling the motion for a new trial; and the question for our determination is, whether the court erred in disallowing that motion *on any of the grounds on which it was made.* It is clearly not proper for us to take into consideration any other objections to the proceedings, trial and verdict than those which the plaintiff has stated in his motion.

This appears to be very clear on general principles, and there is nothing in our laws in conflict with it.

The statute (Rev. Code, 504, article 161) requires that all instructions given by the court in the trial of any cause, civil or criminal, shall be in writing, and that all instructions asked and given or refused, shall be marked by the clerk as given or refused, and shall be a part of the record, or appeal or writ of error, without a bill of exceptions. This simply makes the instructions given and refused, a part of the record, without a bill of exceptions, which before was necessary to that end.

Article 162 gives to any party aggrieved by any charge or decision of any Circuit Court, the right to tender a bill of exceptions, stating the matters of law wherein the court is supposed to err (and of course so much of the evidence touching the same as is necessary to present the questions of law), and the judge is bound to sign the same, and said bill of exceptions is made a part of the record.

This gives the right of a bill of exceptions to the rulings of the court, pending the trial, and before verdict, in order that the judgment, so far as it is affected by such rulings, may be reviewed on appeal or writ of error in this court; and this was the right, and the course of procedure prevailing under the law of England, in order to the correction of errors of inferior courts.

Article 166 of the same statute gives the further right, that " when a motion for a new trial shall be granted or refused, either party may except to the decision of the court, and may *reduce to writing the reasons offered for said new trial,* together with the substance of the evidence in the case, and also the decision of the court on said motion; and it shall be the duty of the judge to allow and sign the same; and such bill of exceptions shall be a part of the record in the cause. And it shall be lawful for the appellant or plaintiff in error, in such cause, to assign for error that the judge in the court below improperly granted or refused a new trial therein, and the High Court of Errors and Appeals shall have power to grant new trials, or to correct any errors of the Circuit Court in granting or refusing the same."

It is manifest that these provisions of law were intended to apply to distinct states of case in which bills of exceptions were recognized or authorized; that article 162 applies to bills of exceptions taken and signed, pending the trial, and before verdict; and that article 166 applies to exceptions taken to the action of the court on motions for new trials. It is equally clear that one or both of the remedies may be resorted to, in one and the same case, but that each must stand on its own merits.

The exceptions taken under the former, are confined to the

special points to which they relate, and can have no other or further application; and this is well settled in the English practice. But exceptions taken to the granting or refusal of motions for new trials were not allowed by the practice in England, for the decision of the court in such motions was not the subject of a writ of error, or appeal; and, moreover, by the motion for a new trial, the party waived his exceptions taken on the trial. Tidd's Pr. 863. These rules, however, are changed by the necessary operation of the statutes referred to; for they both give the substantive right of bills of exceptions under the circumstances stated, and a case may be brought to this court by either or both of the modes of proceeding authorized. But each must stand on its own merits, and must be considered with reference to the special grounds and reasons on on which they may be taken, as stated in the bill of exceptions.

The statute, article 166, requires that a party making a motion for a new trial, shall *reduce to writing the reasons offered for said new trial.* The reason of this is, that the grounds on which the proceeding is founded, may be distinctly presented both to the court below, and for the consideration of this court. That is to constitute the case on which the party asks relief, and he must set forth the reasons on which he asks it, and of course must be confined to those reasons when his case comes to be heard. And it is plain, that he cannot be permitted, on the hearing of that motion in the court below, and much less in this court, to rely on other errors apparent in the cause, than those which he has set forth as the ground of his motion. For that would be to present a different case for relief from that on which he had asked the aid of the court.

In this case, the plaintiff, not having set forth the granting of the instructions now complained of as reasons for his motion for a new trial, cannot, on this writ of error, taken upon the overruling of his motion, object that those instructions were erroneously given.

The last error assigned is, that the court overruled the motion for a new trial.

The first ground taken in support of this assignment is, that the verdict was contrary to the evidence.

The question presented to the jury was one of fraudulent intent on the part of the defendant. From the nature of the question, it is one peculiarly appropriate to be determined by the jury, and it would not be proper to disturb the verdict, unless it clearly appeared that it was against the evidence. Without a particular statement of the evidence, we deem it sufficient to say, that we do not consider the verdict so clearly contrary to the evidence as to justify us in setting it aside and granting a new trial.

The second ground under this assignment is, that the jury found damages of $50 against the plaintiff for wrongfully suing out the attachment. The statute expressly allows the finding of damages on such issues, if the jury find that the attachment was wrongfully sued out. Rev. Code, 377, article 14. It is not pretended that the damages were excessive.

But it is insisted that there was at least probable cause for suing out the attachment, and therefore that the jury were not warranted in finding that the process was wrongfully sued out.

The simple question was whether, under the evidence, the plaintiff was justifiable in suing out the writ; and if the jury were of the opinion that he was not, then the conclusion must be that it was sued out wrongfully. The question was whether the process was rightfully or wrongfully sued out; and that has been settled by the verdict, unless it appear that the verdict is contrary to the evidence and should be set aside.

Let the judgment be affirmed.