## JAMES CADY *v.* THE STATE.

1. EVIDENCE—CONFESSIONS—GENERAL RULE.—The rule as to the admission of confessions as evidence is, that they must be voluntary and free, not induced by the expectation of any advantage held out or promised, nor extorted to escape harm or

Statement of the case.

injury present and imminent or threatened. Confesssions must not proceed from a mind influenced to make them by the hope of a reward or benefit offered; or by the fear of injury or punishment threatened. Some extraneous pressure in the one direction or the other must be proved in order to show that the confessions are not voluntary. Whether the confessions in a particular case ought or ought not to be received in evidence, depends very much on the special circumstances of that case.

2. MOTIVES OF CONFESSION—PRESUMPTIONS.—Where the confessions have been induced by a promise or by a threat, similar admissions subsequently made, will be presumed to have been made under the same motive, unless all the facts accompanying it remove such presumption, and create the belief that such motive had ceased to have influence on the mind. 2 East P. C., 658; Roscoe's Cr. Ev., 30; Peter v. State, 4 S. & M., 37.

3. UNWARRANTABLE INDUCEMENTS.—Anything reasonably tending to hold out the hope or promise of reward or benefit for confession, or tending to create a fear of punishment or injury for the failure to confess, is, in law, an unwarrantable induce- ment to confess. But an appeal to the character or circumstances of the party, such as his family, his situation in life, the claims of justice of others whose rights or safety may be involved in his declaring the truth, to his responsibility to the Almighty for falsification or suppression of the truth, these might be inducements to make a confession, and yet such confessions would not necessarily be incompetent, the inducement not being illegal. 39 Miss., 711.

4. RELATION OF ACCUSED AND PARTY TO WHOM HE CONFESSES.—The relation of the party to whom the confession is made, has much to do with its competency as evi- dence. If made to one in authority in response to an inducement offered, especially if the official personage be in position likely to enable him to render his inducement effectual, it should be promptly rejected.

5. CASE AT BAR.—It appeared in evidence that about eight o'clock on the night of the homicide, the accused was at the house of deceased. They were heard mutually quarrelling, but they did not seem so angry as to excite apprehension on part of witness. On next morning at eight or nine o'clock deceased was found dead about one hundred yards from her house, her skull being fractured, a good sized stick lying near the body. Matthews arrested accused next morning, rode up to him in a field about a mile from the place of the homicide, and told him some one had shot the deceased. He replied that she was not shot, but knocked on the head. At that time eight or ten freedmen came up from different directions and tied accused, and took him to where the body of deceased was, and where one hundred or one hundred and fifty freedmen had collected, and were much excited, and who insisted that accused should be hung. No threats or promises were made to extort confession. Accused's hands were tied and a large crowd had collected around him. Accused said he and deceased had a quarrel about some clothes, the deceased struck him and he struck her one blow, not intending to kill her. *Held:* That such confession was properly admitted in evidence to the jury on the trial.

Error to the circuit court of Monroe county. BOONE, J.

Cady was indicted by the grand jury of Monroe county, at the July term, 1870, for the murder of Minerva Ligon; and, at the same time, was tried and convicted of the crime as charged in the indictment. The state introduced the wit- ness, Edmond Gilliam, a free man of color, who testified that

about eight o'clock on the night of the killing, he saw accused at house of deceased; was distant about ten yards; heard accused and deceased mutually quarreling; did not know the cause, but heard deceased order accused out of her house; left them quarreling and went off to church; they did not seem so angry as to cause him to apprehend danger. About eight or nine o'clock next morning, body of deceased was found about 100 yards from her house. Signs on the ground indicated that deceased had been dragged from the house; some blood on the leaves at the fence; a good sized stick was found near the body. When accused was brought to the place where the body was, witness and others tried to make him confess. When witness was about to state what accused said, he was stopped by the court and not permitted to proceed. On cross-examination, stated he was not the first to find the body, many others were there before him; could not tell whether the signs on the ground were made by dragging body of deceased, or some other object.

J. M. Matthews, witness for the state: On the morning the body was found, arrested accused at work in corn field, about a mile off. Rode up to him and told him some one had shot deceased; he replied, she was not shot, but knocked in the head. At this time, eight or ten freedmen came up from different directions, tied the accused and took him to where body was found. By the time they arrived there, 100 or 150 freedmen had collected, but were not all immediately about accused when he confessed. They were much excited, insisting that he should be hung; there was more feeling after, than before the confession. Accused's hands were tied, and a large crowd collected around him. Accused objected to the statement of confessions being given in evidence, but the objections were overruled, and witness allowed to proceed, Accused said he had given deceased some clothes to wash. They got into a quarrel about them; deceased struck accused, and accused struck her one blow, not intending to kill her. Body of deceased was found in Monroe county, Miss., 30th August, 1869.

Cross-examined: At the time of the arrest, the freedmen were about thirty yards behind, generally armed, and approaching like skirmishers. On being asked if, in going with the accused from the place of arrest to where the body was, anything was said, or threats made, by any of the party to the prisoner, witness answered, no; but, on further answer, said that something might have been said which he did not hear. Counsel for accused here proposed to prove that accused was weak-minded and easily intimidated, but was not allowed by the court to do so, and counsel for the prisoner excepted. The agreed statement of Dr. Tucker was then read in behalf of the state: "That the scar found on the head of deceased, on the morning of the killing, was a fracture of the skull, which produced the death." No other testimony was offered in the case.

The following instructions were given for the state:

1st. If the jury believe from the testimony that the deceased came to her death by violence, and the circumstances point to the accused as the guilty party, in such a manner as to exclude every other reasonable hypothesis as to the cause of her death, they will convict.

2d. That the confessions of the accused may be taken in evidence against him, if connected with other circumstances.

3d. That malice may be inferred from the acts of the accused.

4th. That if the jury believe from the testimony that the accused did the killing, but did it in the heat of blood, or in mutual combat, they will find him guilty of manslaughter.

5th. That a reasonable doubt, is such a doubt as would reasonably arise from the testimony, and not a mere supposition or hypothesis.

The following instructions were asked for by the accused:

1st. If the jury believe from the evidence, that the confessions of the accused were induced by threats or promises, or hope of reward, held out to him, and from the evidence there is no fact or facts adduced sufficient to warrant a conviction, excepting such threats or promises, they will find the defendant not guilty. Refused.

2d. The jury are required to weigh the testimony, and may attach such credit to any witness as they may think proper, and unless they believe from the testimony that the defendant is guilty, beyond all reasonable doubt, they will find him not guilty.

3d. Every man is presumed to be innocent until he is proved, beyond all reasonable doubt, to be guilty; and the conviction in the mind of the jury to find the defendant guilty, must be such as to exclude every reasonable hypothesis of innocence, and unless they have such conviction from the testimony, they will find the defendant not guilty.

4th. In taking the confession of the accused into consideration, the jury are bound to consider all the confessions together, and if the jury believe from the evidence that the defendant did not aim to kill, they cannot find the defendant guilty of murder.

A motion by defendant for a new trial was made, on the ground that the verdict was contrary to the evidence, and contrary to the charges given by the court, but it was overruled by the court, and defendant excepted. ˙

*M. M. Cummings,* for the plaintiff in error.

It is indispensable to the admission of evidence of confessions of crime, that they should be freely and voluntarily made. All authorities agree in this. Were it not so, the state might resort to torture in every case of death, so as to compell confessions, and so make out a case of guilt. In this case, aside from the pretended confessions of the accused, there was no testimony connecting him with the killing, except the isolated fact, that twelve hours before it was known that Minerva was dead, accused was seen at her house engaged in a mutual quarrel, of so slight a character that the witness who heard it, went away to church while it was going on.

The case, therefore, depends almost entirely on the so-called confessions. The fact of deceased ordering the accused out of her house, does not indicate a very heated state of blood between the parties, considering the usual

etiquette of the colored race.  Gilliam, the witness, of the same race, so regarded it.  The fact that the accused was there on that night, if connected with other facts, is greatly weakened in its importance, inasmuch as the killing occurred on a plantation in a neighborhood where one hundred and fifty freedmen could be brought together in an hour by the discovery of the body; thus showing that it was quite possible that some one else might have done the deed. They prove that "a good sized stick was found near the body," but there is not a word of proof that the stick was the instrument of death.  The testimony does not say the deceased had been "knocked on the head with a stick."  There is no proof of blood on the stick, or that it belonged to the accused, or of indications that it had been recently in use. The witness was not the person who first found the body ; there were many others at and about the spot, before he went there.  From Matthews' testimony, the idea at first was that deceased had been shot, but that portion is abandoned by the state.

We insist that Matthews' testimony as to the supposed confessions ought to have been rejected.  While some writers look upon confessions as the highest grade of evidence, others regard them as the weakest, especially as in this case, where they are not strongly corroborated by other evidence. 4 Black. Com., 357, cited in 2 Russell on Crimes, note a, 825, in speaking of confessions made to persons not in authority as magistrates.  Mr. Justice Foster and other able jurists, hold the same doctrine.  See note as above cited. And we ask the court to examine critically the testimony of the witness Matthews, touching the circumstances under which the so-called confessions were made.  The testimony of this witness appears in a suspicious light, at least.  He says no threats nor promises, were made to extort a confession.  To these assertions he swears positively, whereby the court is induced to permit him to tell what the accused said after he had been carried, tied and surrounded by an excited crowd, to the place of the killing.  Upon cross-exam-

ination, however, and after his erroneous testimony had gone to the jury, he sayst hat the crowd who were along with him, in taking the prisoner, with his hands tied, from the field to the place where the body was, might have said something which he did not hear. Of course they might, and no doubt did say something to him, as they were greatly excited, and wanted to hang him right away. And Gilliam, the other witness for the state, also swears that " they had been trying to make him confess."

But we insist that if the court was right in admitting Mathews' testimony on this point, the verdict of the jury is not sustained by the evidence under the charges of the court. While it is the province of the jury to decide upon the weight of the testimony, yet this court will not sanction a verdict that shows upon its face that the jury mistook the crime, as made out by the evidence and the charges of the court. The most that can be made out of the pretended confessions of the accused, taking them all as true, is manslaughter. The confession should have been taken altogether, and have been believed altogether, unless there was proof of facts conflicting with a portion of it. Gilliam says a quarrel was going on between the parties. The prisoner says deceased struck him, and that he struck her " one " blow, not intending to kill. But " one " wound is shown by the evidence, corroborating thus far the statement of the accused. Here is shown a heating of the blood sufficient to reduce the killing to manslaughter.

The court also erred in refusing to allow evidence to go to the jury as to the accused's state of mind and want of courage.

*G. S. Buchanan*, on same side.

There are two grounds of error relied upon in this case; 1st. That the evidence of the confessions of the accused under the circumstances, should not have been admitted by the court; 2d. There was not such a weight of testimony as to warrant a conviction. It is deemed necessary to notice, particularly, only the first ground of error.

Where confessions are made, such as are sufficient to take away the life of the accused, they generally proceed from fear of personal harm, or through hope of favor. State v. Long, 1 Haywood, 455; Wharton's American Crim. Law, 313.

Where confessions tending to establish the guilt of the accused, were made under the influence of personal violence, and through fear, they are not admissible in evidence. To be admissible, the confessions must be free and voluntary. 2 Russ. on Crimes, 826, 831. Serpentine v. State, 1 How. Miss., 356; Wharton's Amer. Crim. Law, 316.

The circumstances under which the arrest of the accused was made, were such as were not only sufficient to greatly alarm, confuse and intimidate him, but were such as to cause a reasonable apprehension that his life was about to be taken, or that great personal violence was impending over him.

The manner of his arrest by ten or eleven armed men, mounted and on foot, the binding of his hands, leading him a mile and a half, surrounded by excited men thus armed, and the efforts made by them to "make him confess," very clearly negative the idea that the confessions were "free" and "voluntary." The confessions, when detailed by one witness, are rejected by the court, but upon the statements of another, are admitted. Why was this? There is nothing to show that one of these witnesses was more entitled to credence than the other.

*J. S. Morris*, attorney-general.

There was no dispute or doubt in the court below, there is none here, of the existence of the *corpus delicti* in all its elements, according to the rules of law laid down by this court in the recent case of Pitts v. the State, 43 Miss., 472.

The only disputed question is, Was the accused, or was some other person, the guilty agent?

Though no third party was present at the final tragedy, so as to testify as an eye witness to all its particulars, the jury had before them enough of the facts—leading facts—proved by

incontestible testimony, to remove all mystery or doubt, and justify a conviction of the accused.

1st. The deceased was last seen alive in company with the accused, in her own house at night, he quarreling with her upon some unknown subject, she vainly ordering him to leave the house, and he passively refusing to go.

2d. She is found murdered on the next morning, at a distance of about 100 yards from the house, her skull fractured from a blow on the head; "a good sized stick" lying near the spot, and indications on the ground that the body had been dragged from the house.

3d. The negative fact, that in all the proof there was no circumstance or indication pointing to any person but the prisoner, as the probable author of the deed.

4th. The confession of the accused that he did the deed.

In this state of the facts, it were needless to attempt the discussion of probable possibilities, and conjectures unsupported by proof. Possibilities or conjectures can avail nothing. There must be in such cases a doubt reasonably arising from the evidence. Cicely v. the State, 13 S. & M., 210 ; Bowen v. the State, 41 Miss., 578 ; McCann v. the State, ib., 489 ; Algheri v. the State, 25 ib., 584 ; Browning v. State, 33 ib., 48.

And as to the law regulating the admission, and governing the effect of confessions, see Lynes v. the State, 36 Miss., 617 ; Peter v. State, 4 S. & M., 31 ; Frank v. the State, 39 Miss., 705 ; Pitts v. the State, 43 Miss., 472 ; Sam v. State, 33 Miss., 357 ; see also, Whar. Am. Cr. L., § 971.

SIMRALL, J. :

The plaintiff in error, James Cady, was tried and convicted in the circuit court of Monroe county, of the murder of Minerva Ligon, and removes his case into this court by writ of error, and complains for error,

1st. That his confession ought not to have been admitted in evidence against him.

2d. That the circuit court ought to have granted him a new

trial, because the verdict was against the weight of the testimony, and against the instructions of the court.

No exception was taken to any of the instructions. No objection is made to them in this court, and they are therefore not the subject of review. Barney v. Shirling, 40 Miss., 328.

The rule as to the confessions of the accused is, that they must be free and voluntary—not induced by the expectation of any advantage held out or promised, nor extorted, to escape harm or injury, present and imminent, or threatened. As the rule is generally stated, the confessions must not proceed from a mind influenced to make them by the hope of a reward or benefit offered, or the fear of injury or punishment threatened. Some extraneous pressure in the one direction or the other must be proved, in order to show that the confessions are not voluntary. Whether the confessions ought or ought not to be received in evidence, depends very much on the special circumstances of each particular case.

Where the confession has been induced by a promise or threat, a similar admission subsequently made, will be presumed to have been made under the same motive, unless all the facts accompanying it, removed the presumption and created the belief that such motive had ceased to have influence on the mind. 2 East P. C., 658; Roscoe, Cr. Ev., 30; Peter v. State, 4 S. & M., 37. Much depends upon the intelligence, or the want of it. The accused must realize the import of his act. It is not every idle threat, or extravagant, unreasonable promise of benefit, that takes from the confession its character of being free. If the threat or promise did not have the influence to induce it, it must be referred to other motives. And this, as we have observed, depends on the special circumstances of the case.

It was said in Frank v. State, 39 Miss., 711, that an instruction in these words was much broader than the rule, to-wit: "To admit a confession, it must be free and voluntary, and made under no inducements whatever, and if any inducements were held out, confessions will not warrant conviction."

Remarking on this, the chief justice, said, "Anything reasonably tending to hold out the hope or promise of reward, or benefit for confession, or punishment or injury for the failure to confess, is, in law, an unwarrantable inducement to confess." An appeal to the character or circumstances of a party, to his family and situation in life, to the claims of justice to others whose safety or rights were involved in his declaring the truth, to his responsibility to the Almighty for falsification or suppression of the truth—these might be inducements to make a confession. Yet such a confession would not necessarily be incompetent, for the inducement would not be illegal.

The tests provided by law to be applied to the confessions, are to insure the truth, so that the verdict of the jury shall not, to any extent, rest on false testimony. The chief inquiry, as recognized by several of the courts, is, whether the inducement was calculated to make the testimony untrue. Rex v. Thomas, 7 C. & P., 345; United States v. Nott, 1 McLean, 499; State v. Kirby, 1 Strob., 155.

The relation of the party (to whom the confession is made) to the accused, has much to do with its competency, to go in evidence. If made to one in authority, in response to an inducement offered, especially if the official personage be in a position likely to give effect to his inducement, it would be promptly rejected. But if under the influence of some collateral benefit or boon, no hope being held out or fear excited, in respect of the particular charge, it is admissible. State v. Grant, 9 Shep., 171.

The record in this case does not show that any promise or threat was offered to the accused. The statement first made by him, was in response to a question, or remark, by one of the witnesses, that Minerva had been shot. The fuller narrative of the circumstances of the killing was made shortly after this, in the presence of a large number of persons, some of whom were present, or near by, when he was arrested, and addressed to the person to whom the first declaration was made. There was the usual excitement, incident to a presence

of a large number of individuals, at a scene of so dreadful a tragedy. It is not shown that up to and prior to this confession, there had been such inducements held out as the law denounces. It was not error in the judge to allow the statement in evidence to be fully scrutinized by the jury, and such consideration given to it as it deserved.

The only question that can be raised on the refusal of the court to grant a new trial is, as to the sufficiency of the testimony. There are these leading facts in evidence: the accused and deceased were seen together about eight o'clock at night, engaged in a quarrel; the next morning the body of the deceased is found about 100 yards distant, with a bruise on the side of the head, a bludgeon lying by, and appearances as though she had been dragged on the ground. Her skull had been fractured by a blow, which produced death. These circumstances strongly point to the accused as the guilty agent, accompanied by the confession that he inflicted the fatal blow, leaves no reasonable doubt as to his agency in the deed.

In reviewing the decision of the circuit court, refusing a new trial, we can only look to the grounds and reasons assigned in the motion, and are precluded from the consideration of any other. Barney v. Shielding, *supra*.

The judgment of the circuit court is affirmed.