## JIM WILLIAMS *v.* THE STATE.

1. EVIDENCE.  *Confession.  Competency.  Reasonable doubt.*

    Where a confession is offered, the court, by prelim nary examination, should determine its competency, and exclude it if there be a reasonable doubt as to its having been voluntary.  *Ellis* v. *State*, 65 Miss., 44.

2. CONFESSION.  *Admissibility.  Procedure.  Instruction.*

    Though the court, on preliminary examination, shall admit a confession, either side may prove all the facts relative to it, either as to its competency or its credibility; and if, at any time during the trial, it is made to appear that it is not competent, it should be excluded.  Its competency being for the court, it is not proper to admit the confession, and instruct that the jury may disregard it unless believed to be voluntary.  Though not bound to credit it merely because admitted, it is only when, after consideration, it is disbelieved that the jury may disregard it.

3. SAME.  *Competency.  Threats.  Case.*

    Accused, a negro, was arrested and charged with murder by armed negroes; was tied, and taken into the woods, where he was told by one of the crowd, an elder of his church, that, if he did the killing, it was best to confess, but that only a voluntary and truthful confession was desired.  No direct threats were made.  He thereupon admitted killing deceased with a stick, but soon denied it.  He was then taken further, and threatened with hanging, to compel him to point out the stick, one of the party ascending a tree, as if to adjust the rope; whereupon, he again confessed, and pointed out the stick.  This was fifteen or twenty minutes after the first confession.  *Held,* that the threats and the demonstration to hang were so intimately connected with both confessions as to show them involuntary and incompetent.  *Cady* v. *State*, 44 Miss., 332, overruled.

FROM the circuit court of Warren county.

HON. JOHN D. GILLAND, Judge.

Appellant was convicted of murder, and appealed.  The facts relevant to the only point passed on by the court are stated in the opinion.

*Miller, Smith & Hirsh,* for appellant.

A confession, before it is admissible in evidence, must be shown to be voluntary. *Garrard* v. *State,* 50 Miss., 147; *Cady* v. *State,* 44 *Ib.,* 332; *Dick* v. *State,* 30 *Ib.,* 593; *Frank* v. *State,* 39 *Ib.,* 705. To hold that, when the alleged confession was made, the mind of the accused was free and uninfluenced by the surroundings, would be ridiculous. It was not, to him, a question of confessing his guilt, but of saving his life. For a similar case, see *Young* v. *State,* 68 Ala., 569.

*Frank Johnston,* attorney-general, for the state.

The confession was admissible. Defendant was simply asked if he had killed deceased, and he replied that he had. The fact that no threats were used was repeatedly brought out on the examination. The second confession, even if inadmissible, did not affect the competency of the previous confession, voluntarily made. There was never a suggestion of threat in reference to that.

COOPER, C. J., delivered the opinion of the court.

The errors assigned and argued by counsel are:

1. That the verdict is not supported by the evidence.

2. That the court erred in admitting evidence of the confessions of defendant, which confessions, it is contended, are not shown to have been voluntary, but were extorted from the defendant by threats and violence.

The first error assigned is not well taken. The evidence not only abundantly supports the conviction, but reaches as near to demonstration as can be possible. But an important part of the evidence is the confession of the appellant, and the fate of the verdict depends upon the competency of this evidence. The confessions were proved by the witness, Emanuel Ellis, who gives, in substance, this account of the circumstances under which they were made. After the death of the deceased had been discovered, a number of persons, including the witness, the

accused and one Clem (an elder in the church of accused), were present at the place where the body was lying. The witness says: "When I first saw him [the accused] that morning, he was with the rest of us viewing the body. Then we followed him back to Mrs. Newman's, followed his track, and we charged him with it, suspecting by his track. Then he ran. We then tied him and carried him back in the woods. He then told us he killed Uncle Ran, whilst he was tied. We did not make out like we were going to hang him down there; we did nothing to him at all. It was when we asked him about the stick that we pretended to hang him, about fifteen or twenty minutes afterwards. We did not put a rope around his neck; just said we were going to hang him. We carried him off as though taking him to a convenient spot. We just did that to get the stick, when he said he killed him with a stick; we did not do that to hurt him in any way, except that the stick would be evidence he killed him." Again, the witness, describing the particular circumstances of the confession, said: "After he first told us he killed him, he denied it. I don't know what made him tell it first. Clem, the elder, done the talking with him, and I told him that it would be best for him to own he killed this man, if he did it. He first said, 'If you all say so,' and Clem said, 'We don't want anything like that; we want you to tell if you killed this man; if you say you did do it, we will send you to the circuit court, and if you say you did not kill him, we will turn you loose right now,' and he said, 'Well, I will tell you, I killed him,' and Clem said, 'What did you kill him for?' and he said, 'Well, the devil got before me.'" Again, the witness said: "The way I happened to find the stick was, there was twelve men of us took Uncle Jim [the accused] by himself, and we got him off to talk with him, and we asked Uncle Jim did he kill this man. He made an answer to the question. I did not use any threats with him at all. He answered me when I asked him; he said he killed the man. No threats were used toward Uncle Jim; he did not tell us why he

killed him; he said he killed him with a rattan stick first. The way we found out the stick was, we took Uncle Jim and carried him around across the bridge, and carried him in the woods a little piece, and we had him tied there. When he tried to get away, we tied him to keep him from getting away, and then we brought him back down there to Uncle Ran, and when we brought him back down there, we took them twelve men off, and we argued that we would ask Uncle Jim, and asked him about the stick, and Uncle Jim he said he killed him with a rattan stick, and his elder asked him where he put the stick, and he told Clem to come on and he would show him, and we all went right on with him, some having hold of the rope, and he carried us way off through the woods, contrary course from the stick, and the stick was right there by the dead man. Clem, the elder, said, ' Boys, I don't believe that stick is where he was going to show us,' and we just let him believe we was going to hang him, and I ran up the tree, and he said, ' Hold on, boys, I will tell you where it was,' and we asked him where it was, and he said, ' Come on back,' and we carried him back there, and he said, ' Look right over there in the bushes.' Uncle Jim pointed out this stick. Jim McDonald picked the stick up first in his presence, and Clem asked him, ' Is that the stick you killed him with?' and he said, ' Yes.' ' ''

Some of the testimony of the witness, Ellis, was given before the court on a preliminary examination, and in the absence of the jury, and some of it before the jury after the court had declared its competency. Over the objection of the defendant, the testimony of this witness was permitted by the court to go to the jury, and the court instructed for the defendant as follows: '' Unless the jury believe from the evidence that the confession made by the accused was a voluntary one, they must disregard it altogether in making up their verdict.''

In *Garrard* v. *State*, 50 Miss., 147, it was held that where there was a conflict of testimony as to whether a confession was voluntary, a question of fact determinable by the jury was

raised, and that the court properly submitted to the jury the question of the competency of the confession. This rule, somewhat modified, probably prevails in other jurisdictions. In Rice on Evidence, vol. 3, p. 308, it is said that "where there is conflicting testimony, the humane practice is for the judge, if he decides that it is admissible, to instruct the jury that they may consider all the evidence, and that they should exclude the confession, if, upon the whole evidence in the case, they are satisfied it was not the voluntary act of the defendant. *Com.* v. *Cuffee,* 108 Mass., 285; *Com.* v. *Nott,* 135 *Ib.,* 267; *Com.* v. *Smith,* 119 *Ib.,* 305; *Com.* v. *Preece,* 140 *Ib.,* 226."

In view of the instruction given for the defendant, submitting to the jury the competency of the evidence of the confession, we infer that the learned judge below was controlled by the rule announced in *Garrard* v. *State, supra.* But that case was overruled by *Ellis* v. *The State,* 65 Miss., 44, in which case it was decided that when a confession is offered in evidence, the court, upon a preliminary examination, should determine its competency, in which examination the defendant is entitled to the benefit of any reasonable doubt that may exist as to the fact of its being free and voluntary. If the court admits the confession, "the state or the defendant may produce before the jury the same evidence which was submitted to the court when it was called on to decide the question of its competency, and all other facts and circumstances relevant to the confession, or affecting its weight and credit as evidence; and if it shall be made to appear at this point, or at any other during the progress of the trial, that the confession was made under such circumstances as to render it incompetent as evidence, it should be excluded by the court. The jury cannot reject or disregard a confession which has been admitted by the court, merely because they may deem it incompetent; for the competency or incompetency of evidence is a legal question not within their province; but, on the other hand, they are not bound to believe or attach any weight or credit to a confession, on the ground

alone that the court has decided that it was admissible, and might be heard by them. The jury has the same freedom of action in reference to confessions which they have in regard to other testimony.''

The distinction between disregarding evidence and disbelieving it is a refined one, but it necessarily inheres in the trial of cases under a system in which, as with us, the competency of evidence is to be determined by the court and its credibility by the jury. If, because of the circumstances of a confession, the jury does not believe it to be true, it ought not to rest a verdict of conviction thereon merely because the court had admitted it; but the evidence cannot be disregarded by the jury— cannot be excluded and not at all considered. The jury must consider all evidence submitted by the court for the purpose of determining its credibility, its weight and effect. Of course, if it is not believed, it can have no further influence; and when this stage in its consideration is reached, then, and not till then, may it be disregarded.

Upon repeated consideration of the evidence touching the circumstances of the confession of appellant, we are of opinion that it does not appear to have been a voluntary confession, clearly and beyond doubt. It was the duty of those arresting the accused to carry him before the proper officer, ''without unnecessary delay, for the examination of his case.'' Instead of so doing, they tie him, and take him off in the woods, where twelve of them still further retire him, for the manifest purpose of subjecting him to investigation. The witness, Ellis, and Clem, the elder in his church, appear to have been the leading spirits of the crowd. The witness then told the accused ''that it would be best for him to own that he killed this man, if he did it,'' to which the accused replied: '' If you all say so.'' At this point, Elder Clem observed that ''we don't want anything like that; we want you to tell if you killed the man. If you say you did do it, we will send you to the circuit court, and if you say you did not, we will turn you loose

right now." Manifestly, what the elder wanted was a free and voluntary confession, in form at least; and if he could not get a confession without resort to the implements of the mob —a rope and a limb—he was prepared to choke one out of the suspected prisoner, as he very soon after discovered. When the prisoner, a few minutes afterwards, failed to point out the stick with which it is said the deceased was killed, Elder Clem ·seems to have suggested a resort to the rope, and the witness "ran up the tree," as we infer, to adjust the rope to a limb. The witness, while on the stand, spoke most affectionately of the prisoner as "Uncle Jim," and declared himself to be his "excellent friend," and, on the whole, especially as he was confederated with Elder Clem, shows himself to have been as "mild a mannered" citizen as ever cut a throat or mobbed a suspected criminal. He "protests too much" that the hanging suggested was to be a harmless pastime, not really intended to be carried further than necessary to secure evidence against the prisoner.

It is conceded by the attorney-general that the statements of the accused, which followed the offer to hang him, are not admissible, but it is said that the confession already made was not thereby rendered incompetent. To this we cannot assent. The attempt to hang was proximate, in time, place, and occasion, with the antecedent confession. It was, in truth, a part of the *res gestœ*, and casts light and suspicion upon what had gone before. We cannot close our eyes to all that this act discloses. It illumines the immediate past equally with the immediate future, and we can appreciate, as the helpless prisoner probably did from the first, the character and purpose of the lawless crowd which had him in custody. The defendant says that the crowd assembled around his house, "and sat around on the fence like buzzards after a horse, and, when I came out of the house, there was guns on that side and guns and pistols on this side." He further stated that they told him if he would confess, it would go light with him, but, if he did not, they would

take him out and hang him.　We think the circumstances of the confession show it not to have been the voluntary act of the defendant, and that it should have been excluded as evidence. *Simon* v. *State*, 37 Miss., 288.　In *Cady* v. *State*, 44 Miss., 332, confessions made by the accused in the presence of a crowd of one hundred or one hundred and fifty persons, much excited, and insisting that he should be hung, were held competent, a decision that was clearly wrong, and which we would never follow.　In that case, in addition to the fact above stated, it was offered to be proved that the " accused was weak-minded, and easily intimidated," but the evidence was excluded.　In delivering the opinion of the court, Simrall, C. J., said that, in determining the competency of the testimony, " much depends upon the intelligence or the want of it; the accused must realize the import of his act."　And, yet, the judgment was affirmed, notwithstanding the court had excluded evidence that the accused was of weak mind, and easily intimidated.　That case is overruled.

*The judgment is reversed, and cause remanded.*