## ABE JONES v. THE STATE.

58  349
72  423
58  349
f77 677

1. CONFESSION. *By prisoner. Inducement. In presence of sheriff. Effect of warning.*

   L., a sheriff, went into the jail under his charge, in company with W., who wished to see some of the prisoners. While in the cell where A. was confined, they were told by another prisoner therein " that A. wanted to make a statement to the sheriff; that his father had sent him word that if he knew anything about the killing of J., it would be best for him to tell the whole truth." The sheriff replied, "that if A. did tell what he knew it must be voluntary, and he need expect no favors from him." W. then told A. that it would be best for him to tell the whole truth, and urged him to do so; whereupon A. made a statement admitting his connection with the killing of J. The sheriff, on the next day, returned with writing materials, and after again warning A. that his confession must be voluntary, and that he could promise him nothing, took down in writing his detailed statement. Upon the trial of A. it was objected that his confession was incompetent evidence, because the inducement thereto was held out by W. in the presence of the sheriff. *Held,* that the warning given by the sheriff excludes the idea that he sanctioned the inducement, and as it must be regarded as held out by a private person, without authority over the prisoner or power over the prosecution, and assuming none, the circuit judge was well warranted in treating the confession as voluntary.

2. SAME. *Proven in evidence. Motion to suspend trial. Case in judgment.*

   In the case above stated, when L. had related in evidence the circumstances of A.'s confession, the latter made a motion to suspend the trial to give time for W. to be had as a witness, to testify to what occurred at the time the confession was made — affirming through his counsel, not under oath, that he was influenced by W. assuring him that it would be best for him to tell the whole truth. The counsel also stated that W. resided within seven miles of the court, and that the accused had been taken wholly by surprise by the testimony of L. The motion was overruled. *Held,* that the court below was not bound to consider the unsworn statement of the defendant's counsel; but, in any view, the motion was properly overruled, because the only fact which it was proposed to prove by W. had already been proven by L.

3. SAME. *Inducement by private person. Question of competency. How determined.*

   Where the inducement to a confession of crime is held out by a private person having no authority over the prisoner or power over the prosecution, and assuming none, the question whether the confession was voluntary, or whether the inducement held out was sufficient to overcome the mind of the accused, is a mixed question of law and fact, to be submitted to the judge presiding at the trial and determined by him from all of the circumstances, and the confession admitted or excluded accordingly.

ERROR to the Circuit Court of Yalobusha County.

Hon. J. W. C. WATSON, Judge.

The case is sufficiently stated in the opinion of the court.

J. J. Slack, for the plaintiff in error.

1. The court erred in admitting in evidence the testimony of L. R. Wilson as to the confession.

2. The court erred in refusing to suspend the trial, upon the motion of the defendant below, in order to get Watson as a witness. It is well settled that a confession obtained by hope or threats is not competent evidence. Simon v. The State, 8 Geo. 288. Wharton, in his work on Criminal Law, says (vol. 1, 7th. ed., pp. 682, 683) : "No man possessed of himself would make a confession to take away his own life. It must generally proceed from a promise or hope of favor, or from dread of punishment, and in such situations the mind is agitated. The man may be easily tempted to go further than the truth." The message from the father of plaintiff in error raised in his mind hope, and held out to him the inducement to tell something. It put him under such influence as this court say makes the confession inadmissible. The improper influence, once shown to exist, is presumed to continue. 8 Geo. 288 ; 50 Miss. 147. In this case the court say : "Where there is a conflict of testimony as to whether the confession was voluntary, it is a question of fact for the jury to determine." In the case at bar there was a conflict, but the plaintiff in error was denied the benefit of it by the refusal of the court to wait until "Watson could be brought to contradict Wilson." The confession was made after the message holding out the inducement to make it, and to a person in authority — his "jailer and sheriff." 44 Miss. 114 ; 11 Ga. 226. I submit that the message alone of the father of plaintiff in error, to say nothing of what Watson said to him to induce him to confess, would make the confession inadmissible as evidence. Certainly, after receiving this message and being again "urged by Watson," his confession would be doubly incompetent. Wilson was the legal custodian of the accused.

In *Van Buren* v. *The State*, this court say: "After the fact is known that either the influence of hope or fear existed, superinducing a confession of guilt, explicit warning should be given the prisoner of the consequences of a confession; and it should likewise be manifest that the prisoner understood such warning, before his subsequent confession could be given in evidence." 2 Cushm. 513; 4 Smed. & M. 31. In the case here presented the prisoner was not warned, but urged to make a confession.

*T. C. Catchings*, Attorney-General, for the State.

The court did not err in admitting Wilson's testimony. The accused was particularly warned that if he said anything, it must be voluntary and without expectation of favor. Nor did the court err in not suspending the trial to give accused an opportunity to send for Watson. The reason given in support of the motion to suspend the trial was, that the prisoner might have Watson's testimony as to what occurred at the interview between Watson, Wilson, and himself — he affirming that he was influenced by Watson in making the statement then made. Inasmuch as Wilson did not testify as to what passed at the interview when Watson was present, Watson's testimony could in no manner impair his, or conflict with it. The confession about which Wilson testified was made at a subsequent time, when Watson was not present, and was made voluntarily and after being duly warned as to the consequences. It cannot be reasonably connected with the visit of Watson, nor with any statement made or inducements held out by him, if it should be believed that any such inducements were held out. If a new trial should be granted and Watson should testify, there would be no conflict between him and Wilson, for the confession about which the latter testified, Watson knew nothing about.

George, J., delivered the opinion of the court.

The plaintiff in error was indicted for the murder of one Jack Fox, and convicted and sentenced by the jury to impris-

onment for life in the State penitentiary. He asks a reversal of the judgment on the ground that the court improperly admitted in evidence his confession. The assignment of error is based upon a special bill of exceptions taken during the progress of the trial, there being no motion for a new trial. A witness, L. R. Wilson, who was sheriff of the county, was introduced by the State, and testified that on a named Sunday in July, 1879, he went to the jail with Mr. Watson, who wished to see the prisoners, or some of them, and that he and Watson went into the cell in which the accused and another colored man, Powell Brown, were confined; that soon after speaking to the prisoner, Powell Brown said that "Abe Jones wanted to make a statement to the sheriff [witness]; that his father had sent him word that if he knew anything about the killing of Jack Fox, it would be best for him to tell the whole truth." Witness replied that "the accused need expect nothing from him, if he did tell what he knew; that if he did it, it must be voluntary on his part;" that Mr. Watson said something to the accused about its being best for him to tell the whole truth, and urged him to do so. The accused then made a statement, in which he recounted his connection with the killing of Fox, but witness said he would call again and see the accused the next day, when he could tell witness what he pleased, and witness would write it down. Witness and Mr. Watson then left the jail. Here, as the bill of exceptions recites, the prisoner moved the court to suspend the trial, and give time for Mr. Watson to be had, in order that he might be examined as to what occurred at the jail on the occasion referred to by witness Wilson — affirming, through his counsel, that he was influenced by said Watson in making the confession, the said Watson assuring the accused that it would be best for him to tell the whole truth. It was further stated by his counsel that Watson resided within seven miles of the court, and that the accused had been taken altogether by surprise by the testimony of Wilson. The motion was overruled. The witness Wilson then proceeded to state, further, that he returned to

the jail on the succeeding Wednesday, taking with him pen, ink, and paper, and then said to the accused that he had come "in order that he might say what he wished, if anything; that what he said must be voluntary on his part; that witness could make him no promise, and he must expect no favor because of any confession he might make." The accused then said that on the Sunday before the killing, he (the accused), Jim Jones, and Dan Drinkwater met at Powell Brown's, and agreed to meet at Tillatoba on the following Wednesday night, and go to Jack Fox's house and call him out and kill him; that they met pursuant to agreement, and went to Fox's house, — the accused remaining about one hundred yards away, with Dan Drinkwater, — and that Jim Jones did the shooting, after which they all left."

Before any confession can be received in a criminal case, it must be shown that it was voluntary. The courts are not entirely agreed as to what circumstances will render a confession inadmissible. The principle on which they are excluded was at one time carried very far by the English courts. Baron Parke said, in *Regina* v. *Baldey*, 21 Eng. Law. & Eq. 590–598: "I confess I cannot look at some of the decisions without some shame, when I consider what objections have prevailed to prevent the reception of confessions in evidence; and I agree with Mr. Pitt Taylor, that the rule has been extended quite too far, and that justice and common sense have too frequently been sacrificed at the shrine of mercy." In this State the rule has, in some cases, been extended to the most extreme limit; but in all these cases the confessions were made by slaves, who, from their condition, were understood to be less capable of free volition than freemen.

A distinction between inducements held out by persons in authority and mere private persons seems now to be firmly settled. It is said by Greenleaf that "if the inducements were offered by the prosecutor, or by his wife, the prisoner being his servant, or by an officer having the prisoner in custody, or indeed by any one having authority over him or over the

prosecution itself, or by a private person in the presence of one in authority, the confession will not be voluntary." 1 Greenl. on Ev., sect. 222. And in this case it is insisted that, as the inducements were held out by Watson in the presence of Wilson, the sheriff, the confession ought to be excluded. But it is shown that Wilson expressly warned the prisoner that his statement must be voluntary, and that he (the sheriff) could do nothing for him. This evidence excludes the supposition that the prisoner thought that the officer concurred in the inducements or gave his sanction to them. Wharton, in his work on Criminal Law (sect. 692), expressly recognizes the rule that when the inducement does not proceed from a person in authority, there must be reason to suppose that such person appeared to the prisoner to sanction the inducement, or else the confession will be admissible.

The admissibility of the confession in this case must therefore be tried by the same rule as if the inducements to confess were held out by a mere private person, not having, nor assuming to have, any power over the prosecution. There is some difference in the authorities as to the effect of inducements held out by merely private persons on the admissibility of confessions thus obtained. The better rule seems now to be, that confessions made in consequence of inducements held out by persons in authority ought to be excluded on grounds of public policy, and that in all such cases the law will conclusively presume that the mind of the prisoner was influenced by them. But inducements held out by private persons, who have interfered without any kind of authority and promised without the means of performance, are not presumed to have the effect to induce a false confession. But they may have such effect, owing to the position of the person holding out the inducements or the weakness of the prisoner. In cases of confessions made to such persons, the question of their freedom or the contrary is a mixed question of law and fact, and should be submitted to the judge. He should admit or exclude them according as he shall determine, from all the circumstances of

the case, that they are voluntary, or that the inducements held out were sufficient to overcome the mind of the prisoner. 1 Greenl. on Ev., sect. 223.

This rule had the implied sanction of the High Court of Errors and Appeals, in *Simon* v. *The State*, 36 Miss. 636. In this case the judge held that the confessions were voluntary, and his judgment was well warranted by the circumstances.

It is also insisted that the court erred in not suspending the trial in order to send for the witness Watson. The bill of exceptions shows that only the statement of the prisoner's counsel, not under oath, was made to the court as to the surprise, and as to what was expected to be proven by Watson. The judge was not bound to consider this statement; but if he was, the only fact stated which could be proven by Watson had already been proved by Wilson, and was in itself insufficient to show that the confessions were not voluntary.

Judgment affirmed.