THE STATE *v.* J. F. SMITH.

CRIMINAL LAW. *Evidence. Confession. Admissibility.*

Where the evidence leaves it doubtful whether a confession of guilt was voluntary, it should be excluded. In view of the facts of this case, the exclusion of an alleged confession approved.

FROM the circuit court of Clarke county.

HON. S. H. TERRAL, Judge.

J. F. Smith was indicted for arson and acquitted, and the state appeals, assigning for error the action of the court in ex-

cluding from evidence a written confession of guilt. The facts relative to the confession are as follows:

The Stonewall Manufacturing Company owned and operated a mill, or factory, and, in connection therewith, a store, the whole being in charge of one Wainwright, as secretary and superintendent. An unsuccessful attempt had been made to burn the store, and the circumstances pointed to Smith as incendiary. Wainwright employed one Brown to work up the case against Smith, agreeing to pay him $25 in any event, and as much as $100 if he succeeded in finding evidence sufficient to warrant a prosecution. Brown thereupon went to work on the case, and, after several weeks, induced Smith to go with him to the office of Wainwright; and there Brown and Wainwright told Smith they had evidence sufficient to convict him of setting the store on fire, and told him of some of the circumstances tending to show his guilt. Smith earnestly protested his innocence. Wainwright finally withdrew from the office and left him with Brown. What then passed between Smith and Brown is not shown, but when Wainwright returned Brown said to him that Smith wished to talk to him privately, and after Brown had retired, Smith said to Wainwright: "I want to tell you I did not do it. I did not set the store on fire." Wainwright said: "Smith, you have said that to me repeatedly. Brown said you wanted to see me privately. Now tell me what you wanted to see me about." Thereupon Smith again denied setting the store on fire, and Brown returned to the office. In the interview, Wainwright told Smith that the evidence was enough to convict him, and that he had better own up. To this Smith replied: "I will give you satisfaction to-morrow morning;" and when Wainwright asked him what he meant by satisfaction, Smith said: "What will you do with me if I confess?" Wainwright said: "You will have to go to the penitentiary and wear stripes, but there ought to be a difference as to whether you go there for a long term or a short term;" and he said that "if he would go before the courts on

an open confession, and not put the company to the expense of hiring a lawyer and prosecuting him, if he was put in for a longer term than Wainwright thought he deserved, he would use every honorable, upright and legitimate means with the court and district attorney to have his sentence lessened." After Wainwright had thus spoken, Smith again said that he did not do it, and Wainwright said: "I understand you, then, Smith. If I would not prosecute you, you did do it; if I do prosecute you, you did not do it." Smith continued, however, to deny his guilt, but again said he would give them satisfaction the next morning; and the three parted with an agreement to meet at the house of Wainwright the next morning. On the next morning, however, Smith sent word to Wainwright that he was sick and could not see him. Wainwright thereupon went to the home of Smith, and found him in bed claiming to be sick. He thereupon left, promising to return in the afternoon, and was requested by Smith to bring Brown with him, as he wished to see them together. Accordingly, Wainwright returned in the afternoon with Brown, and the latter, after talking privately for some time with Smith, took a piece of paper from his pocket and wrote, at Smith's dictation, a confession, and, after reading it to Smith, in the hearing of Wainwright, asked him if it was true. Smith replied that it was. Wainwright remarked that if it was not the truth, and the whole truth, he must not sign the paper, and Smith said: "I will sign it, as it is true," and did sign it.

It is not deemed necessary to set out the confession. It recited with particularity that it was voluntarily made, without fear, threat or compulsion, and without the promise of any benefit. Brown, on leaving, asked Smith if he would object to making affidavit to the confession after it should be transcribed; to that Smith offered no objection, and the confession was rewritten and taken, by a justice of the peace, to the house of Smith, and, after being again signed, it was sworn to. The next day Wainwright went to see Smith, and talked again with

him about the confession, and obtained from him a statement as to the particulars of the effort to burn the store, and also a statement as to his motive. The following day Wainwright, in company with an uncle of Smith and another man, went to Smith's house and told his wife of the confession, and she, in their presence, asked Smith if it was true, and he assented by a nod of his head. The particulars of the confession were then narrated to his wife in his presence, and Smith made no dissent.

*Frank Johnston*, attorney-general, for the state.

I submit that the confession was competent. It falls within the rule announced in *Jones* v. *State*, 58 Miss., 349; and *Fouts* v. *State*, 8 Ohio St. (N. S.), 98.

No counsel for appellee.

WHITFIELD, J., delivered the opinion of the court.

In *Jones* v. *State*, 58 Miss., 349, Wilson told the prisoner, both when Mr. Watson was with him and when he went afterwards alone, that he need "expect no favors from him;" he would "make no promise." In *Fout's Case*, 8 Ohio St. (N. S.), 98, Bain, who had the custody of the defendant the night preceding the day on which he confessed to Amos Scott, merely told the defendant that, if he was guilty, a confession could place him in no worse condition. "The motive of hope" here was "applied by a third person"—Wainwright. 1 Greenl. Ev., § 220. The party did not "make his own calculations of the advantages to be derived from confessing, and thereupon confess," to use Mr. Greenleaf's language. Confessions made to a private person may have the "effect to induce a false confession, owing to the position of the person holding out the inducements or the weakness of the prisoner." 58 Miss., 354. The facts here are much stronger against the admissibility of the confession than in the cases *supra*. The most that can be said is that the confession was of doubtful admissibility, and hence it was properly rejected. *Affirmed.*