PETER, A SLAVE, v. THE STATE, 4 Smedes & Marshall, 31.

### MURDER.

Where a justice of the peace, upon a preliminary examination of the accused before him, took down in writing, his confessions made at the time, it is error to permit him, upon the final trial of the accused, to testify from his recollection, in relation to such confessions; the production of such written statements, being unaccounted for.[1]

The general rule of law is, that confessions when made under the influence of a sufficient threat, or of a sufficient promise, are not admissible as evidence. Subsequent confessions, however, are admissible, if made under such circumstances as create a reasonable presumption that the threat or promise had ceased to have any influence upon the mind of the accused.[2]

The presumption of law is, that the influence of a threat or promise, once made, continues to operate; this presumption may be rebutted by other proofs, showing that it had ceased to operate.[3]

Where a slave, who had been charged with crime, and was threatened by a party armed with guns, that if he did not confess he would be hanged, did therefore confess his guilt; and shortly afterwards, was taken before a magistrate, accompanied by some of these same persons, and was interrogated by the magistrate as to his guilt, without being previously cautioned by the magistrate of the effect of his replies, and he again made confessions of his guilt, *held*, that the last confessions of the accused were not properly admissible as evidence against him.

Error to the circuit court of Franklin county.

Peter, the slave of James Harrington, was indicted at the April term, 1837, for the murder of Samuel Harvey. The case upon change of venue was tried at the Lawrence circuit court, and a mistrial resulted. The presiding judge at a subsequent term, having been of counsel in the case, the venue was again changed to Copiah county. The case not having been transferred, at a subsequent term, by consent of parties, a member of the bar presided. The jury on this trial found the accused guilty, a motion for a new trial was overruled and sentence of death pronounced. The cause was removed to the High court, and judgment was reversed and cause remanded. See 6th How. 326. Again the venue was changed to Lawrence county, where another trial was had, and the prisoner again convicted.

[1] State v. Parish, Bush. (N. C.) R., 239; Archbold Cr. Pr. and Pl., 427, notes.

[2] State v. Carr, 37 Vermont, 191; State v. Hash, 72 La. Ann., 895; 2 Russ. on Cr. 824, 836; State v. Roberts, 1 Dev. 259; Wharton Am. Cr. Law, 695; Archbold Cr. Pr. and Pl., 416, 417, notes; ib. 478; Rex v. Sexton, 6 Peters, 83; Commonwealth v. Knapp, 10 Pick., 477; Milligan & Welshman's case, 6 City Hall Recorder, 69, 77, 78.

[3] Commonwealth v. Knapp, 10 Pick., 477; State v. Roberts, 1 Dev., 259; State v. Gould, 5 Halstead, 163; Commonwealth v. Harmon, 4 Barr, 296; Simon v. State, 37 Miss., 288; Deathridge v. State, 1 Smedes, 75; 2 Russ. on Crimes, 832.

The evidence adduced at this trial was as follows : John P. Stewart, testified that he was an examining justice of the peace, when the prisoner, shortly after his arrest and before his commitment, was brought before him ; when the prisoner confessed that he and another negro, named Tom, agreed to kill the óverseer for Tom's master; that the deceased, with a gun on his shoulder, passed through the woods where he and Tom were, when Tom killed him, by beating him to death with his own gun ; he, the prisoner, not assisting, but standing by, ready to assist if it had been necessary ; that it was not necessary, Tom killing the deceased without difficulty.   That he, the prisoner, did not know the name of the overseer of Tom's master, or Harvey, the deceased, and did not know that Tom had killed the wrong man, until informed by Tom.   The witness further testified, that before interrogating the prisoner he gave him the instruction laid down in the Revised Code of 1822, in the fifth section of an act with reference to justices of the peace ; and informed him that he had a right to ask any question he might wish, but gave him no other charge or caution ; that these confessions were taken down by him in writing at the time.

Witness further testified that the slave was brought before him by several persons who remained and were present during his examination of the prisoner ; that these persons were, some of them, armed with guns, and had, so armed, conveyed the prisoner from his master's place, where he had been arrested, to the magistrate, and that they formed part of a party who had gone to the master of the slave, had arrested the slave, and had in the prisoner's presence made preparations to hang him, if he did not confess; at which time and place when so threatened and surrounded, the prisoner had confessed to the same effect that he had confessed before the magistrate.

The prisoner's counsel moved to exclude this evidence, but the motion was overruled and exceptions taken, and the prisoner was again sentenced to be hung ; whereupon this writ of error was sued out.

The plaintiff in error assigned the following causes of error.

1. The court erred in permitting parol testimony of the prisoner's confessions to go to the jury, as the said confessions were

taken down in writing by the magistrate to whom they were made.

2. The court erred in admitting the confessions of the prisoner under the circumstances.

*H. Cassidy* for plaintiff in error.

Both the errors complained of are so contrary to the long established and indisputable principles of law, that a simple reference to authorities will be sufficient. The confessions were taken down in writing, and without showing a loss of the writings, parol testimony was inadmissible to prove their contents; the rule being that the best evidence the case admits of shall be adduced. 2 Starkie on Ev., 28, admissions; 1 Hale, 284; 1 Phillip's Ev., 113; 2 Cowen & Hill Notes, 243, note 213.

With regard to the second error, the authorities are equally clear. The confessions before the magistrate ought not to have been admitted without its clearly appearing that the magistrate had given those cautions required to put the prisoner on his guard relative to the legal consequences that might result from his confessions. No confessions can be considered voluntary, so long as any influence of hope, or fear of consequences, operates on the prisoner's mind. Roscoe's Crim. Ev., 37. The law is that the evidence must be very strong and clear of an explicit warning by a magistrate not to rely on any expected favor, and that it ought most clearly to appear that the prisoner understood such warning; before his confessions can be given in evidence. Roscoe's Crim Evi., 41. There should be strong evidence to show that the impressions of hope or fear, under which the first confessions had been made, were afterwards removed, before the second confessions can be received. Roscoe's Crim. Ev., 42, 43; 1 Phillip's Ev., 112. The facts of this case are very similar to those in the case of Serpentine v. The State, in relation to the confessions made. 1 Howard, 259, 260.

*J. D. Freeman,* attorney general.

THACHER, J.:

This was an indictment for murder upon the trial of which a verdict of guilty was found by the jury.

It is admitted by the attorney general that the court below

erred in permitting a justice of the peace upon the trial, to testify from his recollection of the confessions of the accused upon the preliminary examination had before him, when it also appeared in evidence that the same justice of the peace had taken that confession in writing, and there was no evidence of the loss of that confession so taken in evidence, and no other satisfactory legal reasons given for its non-production. This court is inclined to take a similar view of the law upon this point.

This court, nevertheless, is desired, in view of a new trial, to express its opinion upon another ground insisted upon as error, in the trial below.

It appears, from the bill of exceptions in the record, that shortly after the arrest of the prisoner, and before any commitment had taken place, he was brought before the justice of the peace, whose testimony is above referred to, for examination on a charge of murder. In his testimony, the justice of the peace says, that upon the accused being brought before him, he informed him of his privilege to ask any questions he might think proper, but that he gave him no further caution or charge, as he recollected. He then proceeded to take the information of the accused in writing. It likewise appears from the bill of exceptions, that a number of persons had collected at the house of the owner of the accused, who, in the presence of the accused, threatened him with death by hanging, by which means confessions had been extorted from him; and that some of those persons, armed with guns, were among those who escorted the accused to the office of the aforesaid justice of the peace, and were present there during his examination.

The general rule of law upon the subject of confessions, is, that when made under the influence of a sufficient threat, or a sufficient promise, they are inadmissible as evidence. So it has been the common practice, when a prisoner has been once induced to confess upon a promise or a threat, to reject any subsequent confession of the same or like facts, though at a subsequent time. East's P. C., 2, 658. But it has been further and frequently held, that notwithstanding such threat or promise may have been used, the confession is admissible if made under such circumstances as to create a reasonable presumption that the

threat or promise had no influence, or had ceased to have any influence upon the mind of the party.   Roscoe's C. E., 30.   In this case, the original confession of the accused made to the persons collected at the house of his owner, as we gather them from the whole record, had, in law, an effect against himself though perhaps not so designed by him.   This was ruled out of the evidence in the court below, as having been improperly obtained.

It remains, then, to inquire whether the confession made before the justice of the peace was induced by the original threats for if otherwise induced, and from voluntary information, it was good. Moore v. The Commonwealth, 2 Leigh, 701.   The presumption is, that the influence of the threats continues, and such presumption must be overcome. State v. Guild, 5 Halst., 163. But such presumption may be removed by the length of time intervening between the threats and the examination, from proper warning of the consequences of such confession, or from any other circumstances that might reasonably be considered sufficient to dispel the fears induced by the threats. Ib.   Was, then, the second confession, in this instance, made under the same influence that produced the first?   The lapse of time between the two confessions would seem not to have been great, since the bill of exceptions informs us that the prisoner was brought before the justice of the peace "shortly after his arrest." The effect of time in effacing the influence upon the mind, cannot fairly be supposed to have operated upon the accused.   Next, when brought before the justice of the peace, it appears that no caution was given to the accused, respecting the effect of his confessions, and that thus unwarned, he proceeded to detail statements that fatally criminated himself.   Upon this point, it is laid down in East's P. C. 2, 658, quoting the opinion of Buller, J., that there must be very clear and strong evidence of explicit warning by the magistrate of the consequences of confession, after the fact is known, of the existence of either the influence of hope or fear superinducing confession; and it should likewise be manifest that the prisoner understood such warning, before his subsequent confession could be given in evidence. Lastly, there was nothing in the circumstances attending the

subsequent confession that would have had the effect to dispel the fears previously created in the mind of the accused. Being a slave, he must be presumed to have been ignorant of the protection from sudden violence, which the presence of the justice of the peace afforded him, and he saw himself surrounded by some of those before whom he had recently made a confession. As we gather from the whole record, he then reiterated his previous confession. This court has before, under similar circumstances, refused to acknowledge such confessions as evidence. Serpentine v. The State, 1 H., 256. It is true, that by adopting this rule, the truth may sometimes be rejected; but it affects a greater object in guarding against the possibility of an innocent person being convicted, who, from weakness, has been seduced to accuse himself, in hopes of obtaining thereby more favor, or from fear of meeting with immediate or worse punishment. We conclude that, as the facts are disclosed in the record, the confession was improperly admitted in evidence.

The judgment of the court below is reversed, and a *venire de novo* must be awarded by the circuit court of Lawrence county.