SIMON *v.* STATE, 37 Miss. R., 288.

## HOMICIDE.

A confession is not admissible in evidence unless it is made freely and voluntarily, without restraint, and without hope of reward or fear of punishment.

Confessions made after very slight expressions, calculated to convey to the mind of

the party confessing that he would obtain any benefit if he would confess, is inadmissible; and this rule applies in cases of the confessions of the guilt of others as well as of the guilt of the person confessing.

A confession made on the same day, and a few hours after a prior confession had been made under a threat or promise, and in the presence of some of the same persons to whom the first confession was made, and without any caution having been given to the prisoner, is presumed to have been made under the influence of the threat or promise before made, and is not admissible in evidence.

The prisoner, who was a runaway slave, was caught and severely bitten by dogs. He was not suspected of the murder, and being asked by a white person why he ran away, he refused to answer; whereupon he was struck down, and warned that if he did not talk, he would be knocked down again. The prisoner was asked by the same person "what he knew about Hiram's killing Norvell," adding at the same time, that "it would be better to tell all about it." The prisoner then stated that Hiram did not kill the deceased, but he, the prisoner, did it. *Held*, that the confession was not voluntary, and therefore inadmissible.

Error to Copiah circuit court. McNAIR, J.

It appears from the record that the prisoner was arrested about the middle of the forenoon, and in a few moments thereafter made the confession, as stated in the opinion of the court. On the same day the prisoner was taken to his master's plantation, and was there met by his master and Warren Ellis, and another person; and upon the approach of these last-named parties, Hartley, who had pursued and arrested the prisoner with his dogs, and who had been present at the former confessions, being then accompanied by his dogs and armed, remarked to Warren Ellis and the others present, "Here is the murderer," alluding to the prisoner. Warren Ellis then, without making any threat or promise to the prisoner, or giving him any caution of his making the confession, asked the prisoner if he killed Norvell, and why he did it. To this the prisoner replied, that he killed Norvell by striking him four blows on the head with the helve of an axe; that he then threw the axe-helve out of the door; and that Norvell was lying on the floor asleep, with his feet towards the fire-place.

To the introduction of this confession the prisoner objected, but his objections were overruled, and he excepted.

The prisoner was convicted, and sentenced to be hung; wherefore he sued out a writ of error, and brings his case to this court.

*M. B. Harris* and *Benjamin King*, for plaintiff in error.

In capital cases extreme caution should be used in the

admission of confessions of the accused, as it is hardly to be supposed that a sane man would make a confession to take away his own life. It generally proceeds from a promise or hope—from a dread of punishment—and in such cases the mind is agitated. The man may be easily tempted to wander from the truth; besides, the witnesses to the confessions may have mistaken his meaning. Wharton's Am. Cr. Law, 3d edition, 313, 314, and authorities cited.

When this confession was made, the prisoner had been chased for two miles, by negro dogs. He had suffered the infliction of a blow over the head with the butt of a whip; he had been severely bitten by the dogs; he had been struck down for refusing to speak; and had, after all these severities, traveled back half a mile, in the presence and custody of armed men, and a pack of fierce negro dogs, whose teeth had lacerated his flesh only a few moments before; and being asked in regard to the killing by the very man who had only a little while before struck him down, and being told by this man that "it would be better for him to tell the whole truth about the murder," he confessed his guilt. Confessions made under such circumstances are inadmissible. Serpentine v. State, 1 How., 256; State v. Roberts, 1 Dev., 259; Wharton's Am. Cr. Law, 3d ed., 317; 2 East P. C., 659; 2 Russ. Cr., 845; Rex v. Thomas, 7 Carr. and Paine, 345; U. S. v. Nott, 1 McLean, 499; State v. Kirby, 1 Strob., 155.

The admonition given by Willis Ellis could not have been regarded by the prisoner in any other light than as a threat. As a slave, without any caution being given him, the prisoner's confessions, even if made voluntarily, could not be given in evidence against him, inasmuch as a slave is always, when in the presence of those who have authority over him, in some sort of duress, so that in such confessions we more often get the wishes of the person in authority, or the slave's belief of his wishes, than the truth. State v. Charity, 2 Dev., 543; Spencer v. State, 17 Ala., 192; Wharton's Am. Cr. Law, 3d ed., 323.

If this confession, made to Willis Ellis and George Hartley, was inadmissible in evidence against the prisoner, all subsequent confessions are to be presumed to be under the same

influence as the first, and therefore inadmissible.  Serpentine
v. State, 1 How., 256; Peter v. State, 4 S. & M., 2 East P. C.,
658; State v. Guild, 5 Halst., 163.

*T. J. Wharton,* attorney general.

HANDY, J.:

The plaintiff in error was indicted, tried, and convicted for
the murder of another slave in the county of Copiah.

In the course of the trial, the state offered several witnesses
to prove that the accused had made confessions of his guilt,
under the following circumstances:

It appears that the accused and the deceased were the slaves
of one Lot W. Ellis, and that, early in the morning of the 23d
of June, 1857, the deceased was found lying on the floor of the
cabin in which he slept, wrapped in his bedclothes, and speech-
less, having four severe wounds on the head, sufficient to pro-
duce death, and of which he soon died; and an axe-helve was
found near, having on it the appearance of fresh blood, and
there being a good deal of blood on the floor.  A boy named
Hiram, belonging to the same master, had been run away on
the night previous, or early in the morning on which the
deceased was found wounded.  Pursuit was immediately made
with dogs for the runaways, and the boy Andy was caught
about four miles from the place, and the accused was pursued
about two miles further, where he was found in the Bayou
Pierre, up to his chin in the water, and having a scythe-blade
in his hand, which, by direction of the person in pursuit of him,
he threw from him to the edge of the water, and, obeying the
order of the same person, came out.  When he came out, he
was struck upon the head a severe blow, and was seized and
bitten by the dogs.  About the time the dogs were taken off
from him, Willis Ellis, a brother of his master, came up—being
ignorant of the circumstances above stated—and he was then
told by the person who pursued the accused, in the presence of
the accused, that the boy had been killed, and that Hiram was
suspected of having committed the act.  Willis Ellis then asked
the accused why he had run away, and the accused not answer-

ing, he struck at the accused with his fist, and said to him that
he would knock him down if he did not talk to him. The
accused was then taken back by these persons the same way
that his pursuers had come, and during that time Willis Ellis
asked him "What he knew of Hiram's killing Norvell;" add-
ing at the same time, and before he answered, "It will be better
for you to tell the whole truth about the matter, or about it;"
and the accused thereupon said: "Hiram did not kill Norvell—
I killed him;" and proceeded to say that he killed him by
striking him four blows on the head with an axe-helve, as he
lay on the floor in the cabin. He was then taken to the house
of Willis Ellis, where soon after George Ellis came; and being
told that the accused had killed Norvell, he inquired of him
why he had done so; and he replied that he had done it because
the deceased had told lies on him. He was then taken to his
master's place, and was met by him and two other persons; and
Hartley, who had pursued and taken him, told them that there
was the murderer, meaning the accused; and in answer to
inquiries made of him, he made substantially the same con-
fession that he had originally made to Willis Ellis. All these
statements were made by him in the presence of Hartley, who
was armed, and had with him his negro dogs. He afterwards
made a like confession to two other persons, in the presence of
Lot W. Ellis.

Objection was made, in behalf of the accused, to the introduc-
tion of these confessions, because they were made under undue
influences; but the court overruled the objection, and permitted
them to be given in evidence; to which exception was taken.

The propriety of the judgment depends upon the admission
of this testimony, and the instructions granted or refused by the
court in relation to it.

It is a very familiar and well-established rule that a confes-
sion is not admissible in evidence, unless it is made freely and
voluntarily, without restraint, and without hope of reward or
fear of punishment; and so strictly has this rule been enforced,
that confessions made after very slight expressions calculated to
convey to the mind of the party confessing that he would obtain
any benefit, or escape any punishment, if he would confess, have

been held inadmissible. And this rule has been applied to all statements made by a prisoner under such circumstances, which may charge him criminally, though in terms they apply to another person, or even purport to be a refusal to confess. Roscoe Crim. Ev., 39 (4th edit.). The reason, then, of the rule is, that the confessions are not free and voluntary, but obtained by legal constraint, and are, therefore, not to be received as evidence of the truth; and this principle applies as well to declarations made in relation to the guilt of others, so far as such declarations may be admissible, as to confessions of the prisoner in relation to himself. For the test is not whether the declarations or confessions affect the party himself, but whether they are obtained by such legal constraint as to show that they were not freely and voluntarily made.

This view of the question meets the ground on which the confessions made by the accused to Willis Ellis are contended to be admissible. That position is, that nothing was said to the accused to induce him to make confessions of his own guilt; that he was only required to tell the truth in relation to the guilt of the boy Hiram; and that he was told that "he had better tell the whole truth" in relation to Hiram's act in the matter. Conceding that this was the purport of what was said to him before he made the confessions, still it does not obviate the objection that he was thereby placed under intimidation, and induced to make the confessions which he did make. The confessions are presumed to have been made in consequence of the appeal to his hopes and fears, and cannot, therefore, be said to be the act of his own free will, and entitled to be taken as evidence against him.

But the admonition given to him was sufficiently broad to comprehend the entire subject of the killing of Norvell. When asked what he knew of Hiram's killing Norvell, he was at the same time warned that "he had better tell the whole truth about the matter, or about it." This was a distinct warning that he had better tell the whole truth in relation to the killing of Norvell; and the influence of the threat was as great to induce him to state all he knew about it, if he or any one else committed the act, as it would have been if it had been done by Hiram, as

was supposed by the persons interrogating him. He was required to tell the whole truth, whatever it might be, about the killing, and was induced to do so by what is, in law, such undue influence as renders the confession thereby obtained inadmissible.

We are, therefore, satisfied that the original confession made to Willis Ellis was inadmissible, and should not have been permitted to be given in evidence.

The subsequent confessions to the same effect were made quickly after the original confession, and when one or more of the same persons were present to whom the first confession was made; and the circumstances of time, place, and presence under which the subsequent declarations were made, are such as to show that they were made under the same constraint which caused the original confession. Peter v. The State, 4 S. & M., 31. The subsequent confessions were, therefore, also inadmissible.

Under this view of the evidence, it is unnecessary to consider the rulings of the court in relation to the instructions upon the point of the confessions.

For the erroneous admission of the confessions, the judgment is reversed, and the cause remanded for a new trial.