WHITE *v.* STATE.

[91 South.  903.  En Banc.  No. 22114.]

1. CRIMINAL LAW.  *Confessions induced by fear involuntary.*
   Confessions induced by fear, though not aroused by spoken threats, are nevertheless involuntary, because the fear which takes away the freedom may arise solely from the conditions and circumstances surrounding the confessor.

2. CRIMINAL LAW.  *Confessions obtained by administering the "water cure" held not voluntary.*
   Where an ignorant negro boy was arrested and brought to the scene of a horrible murder, and after he was released fell into the hands of infuriated planters and plantation managers, who took him into the store building where the bloody corpse lay, and with a crowd of armed white men assembled to obtain a

confession, he confessed to one of them, and then his hands were tied behind him, he was laid on the floor, and a white man stood on his body and they administered to him the "water cure," which consisted in pouring water into his nose, confessions thus obtained were not free and voluntary.

3. CRIMINAL LAW.  *Exclusion of evidence showing that the same influence which rendered former confessions involuntary obtained in the confession introduced held error.*

Where confessions were obtained at the scene of the murder by threats, duress, and physical violence, it was error to refuse to allow defendant's counsel to introduce testimony showing a connection between such involuntary confessions, and another confession to some of the same parties subsequently made at the jail to show that the same influence obtained in the later confession rendering it involuntary.

APPEAL from circuit court of Sunflower county.

HON. S. F. DAVIS, Judge.

Gerrard White was convicted of murder, and he appeals. Reversed and remanded.

*Neil & Clark,* for appellant.

A confession to be admissible in evidence must be free, voluntary and made without hope of reward or fear of punishment. *Simons* v. *State,* 37 Miss. 288.

In the case of *Johnson* v. *State,* 107 Miss. 208, this court said: "It is necessary to look to all surroundings of the person making a confession in order to determine whether it is rendered inadmissible because it resulted from fear or threat or undue influence of a person, even though one not in authority, operating upon the mind of the person confessing.  Even the acts of third persons may amount to a threat excluding confessions, though no objectionable words are spoken." Citing Bishop's new Criminal Procedure, secs. 1237-38; *Ammons* v. *State* (sweat box case), 80 Miss. 592.

In the instant case, appellant, a negro, friendless and alone charged with the murder of a white man which is

the gravest offense known to the law in this state, was in the hands of white men who had carried him behind closed guarded doors for one purpose, and one purpose only, that of securing a confession. Can this court say that a confession so obtained was from the spontaneous operation of appellant's own mind? Was it free from extraneous cause and influence? Was it free of constraint? Was this appellant given that free and impartial trial guaranteed to him by the laws of the State—free from the admissions and influence of incompetent testimony? We think not.

We think the case of *Cady* v. *State,* 44 Miss. 332, is not pertinent for the reason that the facts in that case are not similar to the instant case. Where a confession is made under the influence of threats such influence is presumed to continue until removed by evidence, and a subsequent confession will not be received unless the influence of the first confession is shown to have been totally done away with. *Reason* v. *State,* 94 Miss. 292, citing *Banks* v. *State,* 47 So. 437; *Durham* v. *State,* 47 So. 545.

The court will bear in mind throughout the examination of the record in this case, that the witnesses Robertson and Gilbert, of all the numberless witnesses who were present in the store when the first confession was made who had the face, the nerve and the hardihood to take the stand and testify as to confessions made by this appellant, they were the witnesses who, according to Robertson's own statement, got the second voluntary confession from appellant at the jail in Greenville; they are the witnesses, who, as shown by the record, went to Clarksdale, and in the presence of seven other men, got a confession from Buck Kenard implicating this appellant in the murder of Gross. The manner of obtaining this confession and the number of men who obtained it are shown in Kenard's testimony.

We respectfully submit that, under the law and facts in this case, it should be reversed and remanded.

*II. Cassedy Holden,* special assistant attorney-general, for the state.

The first confession made in the store, as to how the killing occurred, was free and voluntary, though the subsequent confession made in the store was made under compulsion. There was nothing involuntary in the first confession made in the store, unless it be that the mere presence of the plantation owners and managers frightened the defendant to such an extent that his statement was not made with entire freedom. But the mere presence of a person or group of persons, it is submitted, is not sufficient to render the confession inadmissible. Something must actually be done to extort the confession. The intimidation must be active. A mere passive or potential intimidation is not sufficient.

However, that may be, the confession made in the jail at Greenville was wholly admissible. The appellant contends that, since the two confessions made in the store were involuntary, the subsequent confession in the jail was also involuntary and inadmissible because the statement made in the jail was substantially the same as the statements made in the store. It is true that where a confession is made under the influence of threats or fear, a subsequent confession will not be admissible in evidence until such influence is shown to have been entirely removed. *Whitley* v. *State,* 78 Miss. 255, 28 So. 852, 53 L. R. A. 402n; *Mackmasters* v. *State,* 82 Miss. 459, 34 So. 156; *Reason* v. *State,* 94 Miss. 290, 48 So. 820.

But in the instant case, if there were any threats made or fear induced in the store, these influences were entirely absent when the confession was made in the jail. There the defendant was under the protection of the officers of the law. He was inside of his cell, behind barred doors, safe from the reach of those who might try to do him harm. He spoke through the door of his cell, in conversation with Mr. Gilbert and Mr. Robertson and others, and freely told them all about the killing.

As to the first confession made by the defendant in the store, the case of *Cady* v. *State,* 44 Miss. 332, is pertinent. In the Cady case the confession was made by the accused while his hands were tied and in the immediate presence of the body of the deceased, and surrounded by over one hundred men. These men were highly excited and insisted that the accused should be hung, but no threats or promises were made to induce the confession. The court held that the confession there made was properly admitted.

The rule concerning confessions is fully announced in *Johnson* v. *State,* 107 Miss. 196, 65 So. 218, 51 L. R. A. (N. S.) 1183. It is there held by this court that a confession offered in evidence should not be admitted, if there is any reasonable doubt as to whether it was freely and voluntarily made, and if, after its admission, the testimony creates such a doubt, it should be excluded. It is further held in that case that to determine whether a confession is inadmissible because resulting from fear, threat, or undue influence, it is necessary to look to all the surroundings of the person making the confession, and the acts of third persons may amount to a threat, although no objectionable words are spoken.

Of course, the truthfulness of the confessions of the defendant have no bearing upon their admissibility but it is exceedingly interesting to note that they are most probably free from falsehood. At least, the circumstantial evidence of the case most powerfully impels one to conclude that the defendant's confessions contain far more truth than the inconsistent and contradictory statements of Kenard, the blacksmith co-defendant of Gerrard White.

The judgment of the lower court should be affirmed.

HOLDEN, J., delivered the opinion of the court.

The appellant, Gerrard White, was convicted of the murder of T. H. Gross, and sentenced to death, from which judgment he appeals.

The deceased, Mr. Gross, was a merchant and post-master at Holly Ridge. Early in the morning of June 1, 1921, he was found dead lying upon the floor in his store. He had been struck with an ax, and also chopped with a hatchet. The body had been robbed, and the cash in the post office had been taken by the murderer or murderers.

The appellant, Gerrard White, a negro boy eighteen years of age, employed as a farm hand, was arrested by the sheriff during the day, and taken to the scene of the murder, where it appears he was released, but was again taken into custody by a Mr. Gilbert, a planter, who took him into the store where the dead man lay, and, after locking the door, proceeded to obtain a confession from him. The store was a small building, and there were gathered in the building several other white men, plantation owners and managers, some of whom were armed. Among the dozen white men in the store was Mr. Gilbert, who testified that the appellant told him, alone, in the corner of the store, that he (appellant) was present and participated in the killing of Mr. Gross; that he (appellant) did not strike any of the blows, but saw Buck Kenard strike Mr. Gross with an ax, and that Ben Pickens struck him with a hatchet; that the purpose of the killing was robbery, etc. None of the white men in the store testified to this confession except Gilbert. A few minutes after this alleged confession the hands of appellant were tied behind him, he was laid upon the floor upon his back, and, while some of the men stood upon his feet, Gilbert, a very heavy man, stood with one foot entirely upon appellant's breast, and the other foot entirely upon his neck. While in that position what is described as the "water cure" was administered to him in an effort to extort a confession as to where the money was hidden which was supposed to have been taken from the dead man. The "water cure" appears to have consisted of pouring water from a dipper into the nose of appellant, so as to strangle him, thus causing pain and horror, for the purpose of forcing a confession. Under these barbarous circumstances the appellant readily confessed that he knew where

the money was, and told them that it was out at the "dredge
ditch." They then took the appellant to the dredge ditch
to find the money, but there was no money found there or
anywhere else so far as this record shows. Following
this appellant was taken to the Greenville jail and in a
few days thereafter the same Mr. Gilbert and Mr. Rob-
ertson visited appellant at the jail, and they testified that
appellant again voluntarily confessed the crime while in
his cell at the jail.]

At the trial of the case no substantial testimony was in-
troduced by the state showing the guilt of the accused ex-
cept the first confession made by him at the store building
and the confession made in the Greenville jail. The con-
fession made at the Greenville jail was first introduced
by the state over the objection of appellant, and the con-
fession obtained by the "water cure" extortion was c
cluded from the jury, and the jail confession was admitted
by the court.

When the state offered the confession made at the Green-
ville jail appellant's counsel objected, and asked that the
court, on the preliminary investigation, allow him to intro-
duce proof to show that the previous confessions at the
store were extorted, and that the same influence caused the
confession at the Greenville jail, and that therefore the
subsequent confession at the jail was involuntary—was
tainted with the influence which induced the involuntary
confessions at the store. The court refused to permit coun-
sel to introduce this proof, on the ground that the court
had excluded the confession extorted by the "water cure,"
and that the first confession at the store was voluntary.

The main complaints of appellant are that the first con-
fession obtained at the store was involuntary because it
was obtained under fear, duress, and threats, and that the
third confession at the jail was involuntary because it was
so connected with and influenced by extorted confessions
made in the store that it was involuntary; and, further,
that it was error of the court, at least, in refusing to per-
mit appellant to introduce testimony showing that the

same influence which induced the confessions at the store had not been removed when the confession was made at the jail. The opposite view of the state is that the first confession at the store was properly admitted to the jury because it was free and voluntary; that the second confession induced by the "water cure" was properly excluded from the jury; and that the third confession at the jail was disconnected from any of the others and was free and voluntary. We disagree with the position taken by the state, and agree with the contentions made by the appellant.

Now let us see what were the facts and circumstances under which the first confession at the store was made. Here was an ignorant negro boy, arrested and taken from his work in the field, and brought to the scene of the horrible murder. The sheriff had questioned him with reference to his guilt and whereabouts, and apparently concluded that he was not guilty, and thereupon released him, and after he was released, or, according to one view of this record, after he was turned over to a deputy, he fell into the hands of Mr. Gilbert and the other infuriated planters and plantation managers gathered there at the scene of the murder. They took him into the store building, locked the door behind him, and there, in the presence of the bloody corpse so foully murdered but a few hours before, and with the crowd of armed white men there assembled for the purpose of obtaining a confession, he was asked to confess, and under these circumstances he told Mr. Gilbert, and it seems that no one else heard it, about his connection with the crime, and who participated in it. Following this, a few minutes afterwards, the brutal treatment described as the "water cure" was administered to him, which succeeded in obtaining a second confession. It is well to state at this juncture that the negro boy denied confessing to the killing until after he was threatened, frightened, and mistreated as described by Mr. Gilbert himself. The word of the helpless negro boy was of no avail to him; though a human being, his situation was indeed hopeless

and fearful. It is under these circumstances that the court permitted the first confession of appellant to be submitted to the jury. It is true the court excluded the second confession, yet it reasonably appears that the two confessions were closely connected, and were certainly made in the same threatening atmosphere, and while under duress, restraint, and fear.

We do not hesitate to say that a confession obtained under these conditions and circumstances is not free and voluntary. Confessions induced by fear, though not aroused by spoken threats, are nevertheless involuntary, because the fear which takes away the freedom may arise solely from the conditions and circumstances surrounding the confessor; the circumstances in this case were such as to convince us that the confession was involuntary.

In *Johnson* v. *State,* 107 Miss. 196, 65 South. 218, 51 L. R. A. (N. S.) 1183, this court said: "It has been held by this court that a confession should not be admitted if there is a reasonable doubt as to whether it was freely and voluntarily made."

In this same case the court points out that a confession is not admissible unless made freely and without restraint; that it is not voluntarily made if it has been obtained by any sort of threat or violence, direct or implied; that, in order for the confession to be admissible, it must be free from the influence of any extraneous disturbing cause. Of course whether a confession is admissible in any case depends upon the facts and circumstances of the particular case; but it is our judgment that the confession of appellant here made at the store was not free and voluntary, and it was therefore error in the court to allow it to go to the jury.

As to the second point with regard to the confession obtained at the Greenville jail: We think it was error for the court to refuse to allow counsel for the appellant to introduce testimony showing a connection between the confession at the store and the one at the jail, so as to show that the same influence which made the confession at

the store involuntarily had not been removed, but also induced the confession obtained at the jail. It will be remembered that the same two witnesses, Mr. Gilbert, who stood on the breast and neck of appellant while administering the "water cure," and Mr. Robertson, were the ones who obtained the confession at the jail. We are assuming from the record that the confession at the jail was a new statement by the appellant, yet the record is rather cloudy as to whether or not the appellant was merely repeating, at the instance of Mr. Robertson, what he said he had told them under duress and threats at the store. At all events the confessions at the store were involuntary, and it may be that the one at the jail was also involuntary because induced by the same wrongful influence which induced the previous ones. *Banks* v. *State,* 93 Miss. 700, 47 So. 437; *Durham* v. *State* (*Miss.*), 47 So. 545.

We have considered and determined the last point, though not necessary to do so, because the judgment would be reversed anyway on account of the error in admitting the confession at the store; but upon a new trial the question may arise again as to the jail confession, and for that reason we have decided it.

In view of the conclusions reached above, the judgment of the court below is reversed, and the case remanded for a new trial.

*Reversed and remanded.*