WHIP v. STATE.*

(In Banc.   Oct. 11, 1926.)

[109 So. 697.   No. 26021.]

1. CRIMINAL LAW.
   Evidence must exclude every reasonable doubt that confession was procured under threat of punishment or promise of reward, and that it was not freely and voluntarily made.

2. CRIMINAL LAW.

Influence of threats or hope of reward under which confession was made must be shown to have been removed before the making of subsequent confession that latter may be admissible.

3. CRIMINAL LAW.

It is duty of no one to extort confession from prisoner; rather he should be warned that any statement may be used against him.

4. CRIMINAL LAW.

Confession by one charged with crime, though to person not an officer, if procured by improper influence, is inadmissible.

5. CRIMINAL LAW.

Voluntary confession proceeds from spontaneous operation of party's mind, free from influence of any extraneous cause.

6. CRIMINAL LAW.

Under uncontradicted testimony of defendant, *held* his confession was incompetent as not proceeding from spontaneous operation of his own mind, free from outside influence.

7. CRIMINAL LAW.

In procuring confession from defendant by improper influence, he is forced to give evidence against himself in contravention of Constitution 1890, section 26.

*Corpus Juris-Cyc References: Criminal Law, 16CJ, p. 566, n. 76; p. 567, n. 86; p. 717, n. 39; p. 718, n. 41; p. 722, n. 5; p. 723, n. 9; p. 724, n. 22; p. 728, n. 77; p. 734, n. 20, 23; As to when confession is deemed voluntary, see notes in 18 L. R. A. (N. S.) 678; 50 L. R. A. (N. S.) 1077, 24 A. L. R. 705; 1 R. C. L., pp. 553-559; 1 R. C. L. Supp., pp. 199-201; 4 R. C. L. Supp., p. 41; 5 R. C. L. Supp. 51.

APPEAL from circuit court of Humphreys county.

HON. S. F. DAVIS, Judge.

James Whip was convicted of murder, and he appeals. Reversed and remanded.

*H. F. Jones* and *Louis Cochran,* for appellant.

Attention of the court is directed to the alleged confessions shown by the sheriff of Humphreys county and by the prosecuting attorney. We have here a negro boy, entirely drunk, his life having been threatened, appre-

hended by strangers, stripped of his clothing and beaten by a negro who was ordered and directed to administer the beating to him by white men, thrown into a solitary cell, stripped of his clothing for a period of nine days, told by some of the men that they were going to hang him, told by one of the prisoners, a white man, and also by a deputy sheriff that he would be hanged unless he confessed and that it would go better with him to plead guilty and ask the mercy of the court; and he states that these were the reasons which impelled him to tell the sheriff and prosecuting attorney that he committed the act. Has this been denied by the sheriff, by the prisoner Cummins, by Webb, the deputy sheriff? No. The first words of the sheriff to the defendant when the defendant sent for him and asked to be permitted to go with the other prisoners in the jail were: ''Haven't you anything to tell me?'' He expected the confession he had already planted.

The prisoner, defendant, was told repeatedly by a white man in the jail whom he did not know, that they were going to hang him, but if he plead guilty they would not hang him. There was no evidence contradicting this statement of the defendant. Cummins does not appear on the stand and dispute it; nor does the deputy sheriff, Webb, deny that he also told this defendant that it would be best for him to plead guilty and ask the mercy of the court. More than this, it is shown by the language of the sheriff himself, just before the alleged confession was made that there was an understanding between the sheriff, Cummins and Webb to induce the defendant to make a confession.

Is it worthwhile to say more concerning the testimony relative to confessions thus procured? It makes no difference who procured the confession, who offered the inducements or suggested them, or who made the threats or administered the ''initiation.'' Of course, the sheriff answered the perfunctory and leading question that the confessons were without inducement or immunity

and without threat made by himself. That threats were made, that punishment was administered, that inducement was offered or suggested, and that influenced by all of this, a confession was wrung from the defendant is quite sufficient to make such a confession involuntary and, therefore, inadmissible; and the court erred in not excluding them from the consideration of the jury.

*J. A. Lauderdale,* Assistant Attorney-General, for the state.

The confessions made by appellant were properly admitted as testimony before the jury. At the time a hearing was had before the court, in the absence of the jury, defendant did not offer any testimony in contradiction of the statements made by Mr. Purvis, nor did he object to this testimony going to the jury. The testimony with reference to the admissibility of the dying declaration of deceased and the confessions of appellant were held at the same time. When this examination of Mr. Purvis was concluded, the defendant did not offer testimony to contradict him, neither did he object to the testimony with reference to the confession. When the state offered to prove the alleged confessions of appellant before the jury, no objections were made by him.

I understand it to be the rule that when testimony of confessions is admitted and it afterwards develops that the confessions were illegally obtained, that it is the duty of the court to exclude the same from the consideration of the jury. It is true that the defendant, a witness in his own behalf, testified that on the night he was put in jail other persons whipped him with a leather strap. He also testified that he did not know why they whipped him. If the officers had had him whipped for the purpose of extorting a confession from him, it stands to reason that they would have informed him why they were having him whipped. He also testified that one Cummins, a prisoner in jail with him, advised him that

it would be better for him to confess. However, he did not produce this witness nor say why he does not do so.

J. D. Purvis testified that it was customary for the prisoners in jail to initiate a newcomer by giving him a whipping with a leather strap; that neither he nor any of his deputies ordered this negro whipped; that Cummins was in jail but did not have access to the prisoner, could not get nearer to him than twelve or fifteen feet, and that the door between them was locked.

After this proof was made, the defendant moved that the court exclude from the consideration of the jury the testimony for the state with reference to the confessions made by the defendant. The court overruled the motion and in order to do so he necessarily found that the proof offered by the defendant was not sufficient to generate in his mind a reasonable doubt as to whether or not this confession was freely and voluntarily made.

It is the duty of the court, if he believes beyond all reasonable doubt, that a confession was freely and voluntarily made, to admit it in evidence. He should not later exclude it unless it is made to appear that the confession was obtained by threats or promises. This court will not reverse the judgment of the trial court unless it is manifestly wrong. See *Hunter* v. *State,* 74 Miss. 515; *Williams* v. *State,* 72 Miss. 190; *Ellis* v. *State,* 65 Miss. 44; *Simmons* v. *State,* 61 Miss. 243; *Corothers* v. *State,* 121 Miss. 763; and *Brown* v. *State,* 107 So. 373.

Argued orally by *Louis R. Cochran* and *H. F. Jones,* for appellant, and *J. A. Lauderdale,* Assistant Attorney-General, for the state.

ANDERSON, J., delivered the opinion of the court.

Appellant, James Whip, a negro, was indicted and convicted in the circuit court of Humphreys county of the murder of George Ransome, a white man, and sen-

tenced to be hanged. From that judgment appellant prosecutes this appeal.

On the night of the 24th of January, 1926, probably between seven and nine o'clock, Ransome's throat was cut, from which wound he died about half past eight o'clock the next morning. Appellant was with Ransome at the time the latter received the wound from which he died.

On the night Ransome was wounded, appellant was arrested and lodged in jail at Belzoni, the county seat of Humphreys county. He was placed in jail probably between ten and eleven o'clock that night. He was put in a cell in the basement of the jail away from the other prisoners confined therein.

To convict appellant, the state relied largely on two confessions made by the appellant to the sheriff of Humphreys county and the county attorney of that county. The first of these alleged confessions was made two or three days after the appellant was placed in jail; and the second eight or nine days after he was placed in jail. The first confession was only partial; the second was full and showed, if true, that the appellant cut the throat of the deceased because the latter refused appellant's demand for money.

Both the sheriff and the county attorney testified that these alleged confessions were voluntary; that they were made by appellant without the hope of reward or the fear of punishment; that neither of them held out any inducement whatever in order to procure the confessions; and that they knew of no such inducement having been held out to appellant by any one else, but neither of them testified that they warned the appellant that any confession he made might be used against him.

Appellant testified that he had no hand in the infliction of the wound that resulted in the death of the deceased; that in appellant's presence two white men, unknown to appellant, and the deceased engaged in a fight over an indebtedness claimed by one of them against the de-

ceased; that in this difficulty one of the unknown white men inflicted the wound that resulted in the death of the deceased.

Appellant testified further that on the night he was placed in jail at Belzoni, and shortly before midnight, a negro prisoner in the same jail was let into his cell, who, with a leather strap, gave appellant a severe beating; that at the time this beating was administered appellant had no clothing on except his underwear; that the beating took place in the presence of a white prisoner in the same jail and a deputy sheriff of the county, both of whom admonished him that the only way to "save his neck" was to confess that he had inflicted the wound that caused the death of the deceased, and urged him to make such confession to the sheriff; that he was kept in the cell which he occupied alone until he made a full confession to the sheriff and county attorney, when he was taken out and placed in a cell with other prisoners; that, while he was in the cell alone, he had nothing on in the way of clothng except his night clothes; that three or four days after the beating was administered to him he sent for the sheriff and made a partial confession, and three or four days later made a full confession to the sheriff and county attorney, in which he stated he had cut deceased's throat because deceased had refused his demand for money. Appellant testified that his alleged confessions to the sheriff and county attorney were brought about by the beating administered to him by the negro prisoner in the presence of a white prisoner and the deputy sheriff, and the admonition of both of the latter that the only way to "save his neck" was to confess his guilt. Neither the state nor the appellant introduced either the white prisoner or the deputy sheriff as witnesses, nor any one else who testified as to what took place at the time the beating was administered. Appellant's testimony touching that matter, therefore, was uncontradicted. Appellant was the last witness testifying in his own behalf. At the close of his testimony, the

state reintroduced the sheriff, who reiterated in his testimony that he knew of no promise of reward or threat of punishment having been made by any one to procure the alleged confessions, but admitted that it was customary in the Humphreys county jail for the prisoners to "initiate" a new prisoner by giving him a beating.

In order to make competent a confession of guilt by a defendant charged with crime, the evidence of such confession must be so strong as to exclude every reasonable doubt that it was procured from the defendant under a threat of punishment, or a promise of reward. It must exclude every reasonable doubt that the ·confession was not freely and voluntarily made. *Ellis* v. *State,* 65 Miss. 44, 3 So. 188, 7 Am. St. Rep. 634; *Williams* v. *State,* 72 Miss. 117, 16 So. 296; *State* v. *Smith,* 72 Miss. 420, 18 So. 482; *Johnson* v. *State,* 107 Miss. 196, 65 So. 218, 51 L. R. A. (N. S.) 1183.

Where a confession is made under the influence of threats or the hope of reward, a subsequent confession will not be admissible in evidence until such influence is shown to have been removed. *Whitley* v. *State,* 78 Miss. 255; 28 So. 852, 53 L. R. A. 402, note; *Reason* v. *State,* 94 Miss. 290, 48 So. 820; *Mackmasters* v. *State,* 82 Miss. 459, 34 So. 156.

It is not the duty of an officer or any one else to extort a confession of guilt from a prisoner. · On the contrary, the prisoner should be warned that any statement he may choose to make showing his guilt may be used against him on his trial. *Ammons* v. *State,* 80 Miss. 592, 32 So. 9, 18 L. R. A. (N. S.) 768, 92 Am. St. Rep. 607. And a confession of guilt by a defendant charged with crime to a person not an officer, if procured by a promise of reward or threat of punishment, is incompetent. *Johnson* v. *State,* 107 Miss. 196, 65 So. 218, 51 L. R. A. (N. S.) 1183. In the latter case, it was shown that a newspaper man visited the defendant in jail three times within twenty-four hours after the coroner's inquest over the body of the person the defendant was charged with murdering;

that the defendant was sick at the time, and in fear of lynching. The newspaper man told the defendant that there was no hope of his salvation unless he confessed, and stated that he, the newspaper man, could look into the defendant's heart and see the crime he had committed. The defendant thereupon confessed his guilt to the newspaper man. The court held the confession incompetent, because not voluntary, and, in discussing the question said that a voluntary confession meant a confession proceeding from a spontaneous operation of the party's mind, free from the influence of any extraneous cause.

Applying these principles to the case in hand, we are of the opinion that the alleged confession of appellant was incompetent; that it did not proceed from a spontaneous operation of his own mind free from any outside influence, and, therefore, in procuring same appellant was forced to give evidence against himself in violation of section 26 of our Constitution.

We find no merit in the other contentions of the appellant.

*Reversed and remanded.*