COMINGS *v.* STATE.

(In Banc. May 23, 1932.)

[142 So. 19. No. 29656.]

Ben **Wilkes,** of Greenville, for appellant.

444

W. A. Shipman, assistant attorney-general, for the state.

**Griffith, J.**, delivered the opinion of the court.

Two errors appear on the record of the trial of this case. The first was the erroneous admission of evidence that appellant entered a plea of guilty in his preliminary or committal trial, when the facts show that the said plea or confession was not voluntary in that measure required by law; and, second, in the argument by the district attorney wherein he testified in the guise of argument to the effect that appellant's confederates had confessed to appellant's connection with the crime, when there was otherwise no such testimony before the jury. Although the first error is palpable, and the district attorney is censurable for the second, we are constrained to the conclusion that on this entire record the verdict and sentence cannot be reversed and set aside, though the errors aforesaid are present; for, upon a careful scrutiny of the evidence in this case, and of every detail thereof, we are of the opinion that the competent evidence so clearly discloses the guilt of appellant, and so completely excludes any other reasonable hypothesis, that no impartial jury, duly mindful of the obligations of their oaths, could fail to convict. House v. State, 121 Miss. 436, 83 So. 611.

Before this court will reverse a cause, it must be satisfied of two facts—namely, that error in favor of appellee was committed in the trial; and, second, that the error was prejudicial to the appellant. Calicoat v. State, 131 Miss. 188, 95 So. 318; Jones v. State, 104 Miss. 871, 61 So. 979, L. R. A. 1918B, 388; Patterson v. State, 106 Miss.

338, 63 So. 667; Lewis v. State, 132 Miss. 200, 96 So. 169; Goins v. State, 155 Miss. 662, 124 So. 785. From what we have said in the foregoing paragraph, it is seen that this case comes well within the rule last above stated, and that the judgment must therefore be affirmed.

Affirmed.

**Ethridge, J.,** delivered a dissenting opinion.

I am unable to concur in the opinion of the majority. Reluctant as I am to dissent on account of the possibility of the defendant and others indicted with him being connected with organized criminal agencies, I do not think that we can overlook the errors mentioned in the majority opinion without denying the fair trial by an impartial jury guaranteed to all persons accused of crime under section 26 of the Constitution. A fair trial by jury, I think, means a trial on competent evidence, fairly conducted, in which all the rights of the defendant are recognized and safeguarded.

In my opinion the testimony offered by the defendant, if believed, would justify an acquittal; while I unhesitatingly say that I would affirm the conviction but for the two errors mentioned—that is, the improper introduction of the plea of guilty at the preliminary trial, and the argument of the district attorney. But the force of a confession by the defendant himself is of such weight —so conclusive to the ordinary mind—that I feel sure that it contributed to the conviction, and perhaps would of itself have caused a conviction. It is conceded that it was unlawfully admitted in evidence. The evidence for the state, independent of this confession, does not connect the appellant with the robbery itself, but tends to prove that he was an accessory before the fact. The proof of the state upon this proposition of accessory before the fact is strong and convincing, but not necessarily conclusive.

While the defendant's statements and conduct at the time of the arrest were inconsistent with his theory produced on the trial, his statement at such time was not inconsistent with the theory that he was an accessory after the fact—a different offense from that for which he was indicted, and of which he was convicted.

It is never safe for this court, in a case of conflicting evidence, to say what the jury would believe. The value of a jury trial, and the very purpose of it, is to have questions of fact, and of guilt, in criminal cases decided by the common sense of the common man, guided by the instructions of the judge as to the law, and limited by the evidence permitted to go to the jury.

It appears to me that, under our decisions, it cannot be held harmless error to introduce a confession where there is evidence by living witnesses which, if believed, would warrant an acquittal. Of course, the evidence is for the jury, and for the court to deprive the defendant of a jury trial limited to the legal evidence would endanger the safeguard of the bill of rights. Confessions are inadmissible for any purpose, when made under the influence of a sufficient threat or sufficient promise. Peter v. State, 4 Smedes & M. 31, 1 Mor. St. Cas. 249; Jordan v. State, 32 Miss. 382, 1 Mor. St. Cas. 928; Cady v. State, 44 Miss. 332, 2 Mor. St. Cas. 1678; Garrard v. State, 50 Miss. 147; Hunter v. State, 74 Miss. 515, 21 So. 305; Ford v. State, 75 Miss. 101, 21 So. 524. Expressions calculated to engender a hope of benefit, or fear of injury, will vitiate a confession made thereupon. Simon v. State, 37 Miss. 288, 2 Mor. St. Cas. 1229. If a confession be made by the accused to one in official authority, in response to an inducement offered, especially if the officer be in a position likely to enable him to render his inducement effectual, it should be promptly rejected. Cady v. State, supra.

Where the officer in charge of the prisoner informed the latter that it might go easier with him if he told all

about it, and that if he did the shooting he had better say so, and the accused confessed, but the confession thus extracted by hope inspired by inducement is not free and voluntary, it is inadmissible. Harvey v. State (Miss.), 20 So. 837.

A confession to an officer having custody of the accused, after a statement by the latter to the former to the effect that he would tell the officer all about the crime if he would help him out, and the officer promised to do so, cannot be admitted in evidence, because not made freely and voluntarily. Mackmasters v. State, 82 Miss. 459, 34 So. 156.

What constitutes a free and voluntary confession is shown in the case of Whip v. State, 143 Miss. 757, 109 So. 697. It was there held that a confession must be the operation of a free and voluntary impulse, uninfluenced by hope or fear. In Johnson v. State, 107 Miss. 196, 65 So. 218, 51 L. R. A. (N. S.) 1183, it was held that a confession offered in evidence should not be admitted if there is any reasonable doubt as to whether it was freely and voluntarily made, and, if after its admission the testimony created such doubt, it should be excluded. See, also, Fisher v. State, 145 Miss. 116, 110 So. 361; Jones v. State, 133 Miss. 684, 98 So. 150; Clash v. State, 146 Miss. 811, 112 So. 370; White v. State, 129 Miss. 182, 91 So. 903, 24 A. L. R. 699.

While the witnesses for the defendant, who were jointly indicted with the appellant, were testifying, one of them stated that the district attorney offered to make it light on him if he would implicate Comings, but that he declined to do so. The witness was vigorously cross-examined on this point, but not contradicted by evidence; and counsel for the defendant evidently was referring to this testimony in the argument; and the district attorney, in replying to this argument, in closing the case for the state, when he made the statement, said: "Gentle-

men of the jury, I have been your district attorney for three years, and in this case my motives have been impugned for the first time, but I'm going to tell this thing just as it is. Those two boys, Stovers and Winters, confessed to this crime to the officers and implicated Comings, and said he furnished the brains for the job.'' This argument was objected to immediately, and motion made to discharge the jury and enter a mistrial, to which the court responded, ''The jury remembers the evidence,'' and overruled the motion for a mistrial. The district attorney then said: ''Yes, I am going to tell it just like it was. They confessed and implicated Comings up to the time they were seen by this Greenville lawyer'' (referring to Ben Wilkes, counsel for defendant). To this remark, counsel for the defendant again objected, but before the court ruled on the objection the district attorney said: '' 'Oh, yes, you vent your spleen on me, but I am going to tell it just like it is, regardless of how many lawyers come from Vicksburg or Greenville.' Whereupon, the audience began to clap and applaud. The court reprimanded the audience, but did not caution the jury not to be influenced by this applause; and the defendant again moved for a mistrial, which motion was again overruled.'' This argument made in closing the case is assigned as error. The state had sought to prove by one witness that Winters or Stovers, in their confession shortly after their arrest to the Memphis officers and sheriff of the county, that they had said that Comings was implicated in it. Objection was made, and the court excluded this testimony, and there was no evidence in the record to sustain the attorney's statement of fact that Winters and Stover had said that Comings was implicated, and furnished the brains for the job. The language of the district attorney that he was ''going to tell the thing just as it was,'' then stating that the two boys, Stover and Winters, confessed to this crime to the officers, and implicated Com-

ings, saying that he furnished the brains for the job, was a statement of a fact not in evidence, and which could not have been admitted in evidence unless made in the presence and hearing of Comings and undenied by him, which is not the case here.

Our court has uniformly condemned the statement of facts not in evidence by attorneys in their arguments. We have given attorneys as wide latitude as necessary; but we have never permitted them to state facts outside of the evidence of a hurtful or damaging nature to the rights of the defendant. It is difficult to see how any more damaging statement could have been made. It not only stated what purported to be facts that were damaging to Comings, as affirmative evidence, but the statement also practically destroyed the effect of the testimony of Winters and Stover in behalf of Comings. Winters and Stover were admittedly the principals in the robbery. They pleaded guilty, but testified that Comings had nothing to do with the robbery, and knew nothing of it until it was completed. It therefore contradicts the evidence of these vital witnesses for Comings. Objection was made in the manner required by law, and the motion should have been sustained to discharge the jury. The damage of such a statement, under the situation which then existed at the trial, could not be removed in any other way. It may be all right to censure the attorney, as stated in the majority opinion, but censuring the attorney does not cure the damage that his statement did to the appellant's rights. In the early case of Perkins v. Guy, 55 Miss. 153, 30 Am. Rep. 510, this court laid down the rule that counsel should not be permitted, in arguments to the jury, to state or comment on facts not proven. It was there held that the judge should sua sponte interpose and correct any such illegalities; and, if he does this in a case, a new trial will not be granted because of such statement and comment.

In Martin v. State, 63 Miss. 505, 56 Am. Rep. 813, the court reversed a criminal case because of a damaging statement made in the argument to the jury. The district attorney there said: "Martin, the defendant, is a man of bad, dangerous, and desperate character, but I am not afraid to denounce the butcher boy, although I may, on returning to my home, find it in ashes over the heads of my defenseless wife and children."

In Harwell v. State, 129 Miss. 858, 93 So. 366, a district attorney, in his argument, in commenting on facts, stating that Harwell had not introduced as a witness his co-defendant, said: "Gentlemen: I can imagine what took place in that room there, when these defendants went in there with their attorneys, after the state had rested its case. This is about what occurred: The attorneys said to the defendants: 'Boys, the state has made out a terribly strong case against you, and it looks like they have got you. What have you to say for yourselves?" Then I imagine the big fellow (referring to Henry Payne, who did not take the stand in his own behalf), said: 'I know of nothing I could say to save myself, so I wont go on' (meaning on the stand). Then I imagine the little fellow, Harwell, said: 'Well, I am a young man, twenty-two years old. I cannot make it no worse, so I will take a shot at it.' "

In the course of the opinion, we said: "Does the argument avoid the conviction as to Harwell? Harwell testified in his own behalf, but he did not introduce his co-defendant, Payne, and, indeed, could not introduce Payne, or force him to testify as a witness, any more than the state could introduce him and force him to testify. In other words, both the state and Harwell were equally powerless to use the testimony of Payne, unless Payne consented. It would appear from the argument that at the close of the testimony for the state the defendants and their counsel retired to consider what evidence would be put up for the defendants. We do not think any

comment should be made on this fact before the jury. It is a sacred right, accorded to all defendants by the Constitution, to be defended by counsel and to confer with such counsel with reference to their causes. It was improper for the district attorney to seek to draw a deduction, and to state before the jury what in his opinion occurred when this conference was held.'' And the court reversed the case, concluding the opinion in the following language: ''In matters of argument, counsel necessarily must have a wide latitude. His illustrations may be as varied as the resources of his genius; his argumentation as profound as learning and logic can make it. He may give wing to his wit and play to his imagination, so long as he deals with the evidence in the case and the deductions to be drawn from the testimony; but he should never allow himself to imagine facts not in evidence, nor allow his wit to wing him out of the record.''

We have many cases which have been reversed because of the statement, as facts, of matter not found in the record. See Martin v. State, 63 Miss. 505, 56 Am. Rep. 813; Evans v. State, 98 Miss. 697, 54 So. 154, Ann. Cas. 1913B, 257 (reversed for comment by counsel alone); Long v. State, 81 Miss. 448, 33 So. 224; Middleton v. State, 80 Miss. 393, 31 So. 809; Harris v. State, 96 Miss. 379, 50 So. 626; Hampton v. State, 88 Miss. 257, 40 So. 545, 117 Am. St. Rep. 740; Collins v. State, 99 Miss. 52, 54 So. 666; Smith v. State, 141 Miss. 772, 105 So. 758; Matthews v. State, 148 Miss. 696, 114 So. 816; Hill v. State, 118 Miss. 170, 79 So. 98; Darby v. State, 121 Miss. 869, 84 So. 6; Hyatt on Trials, p. 1561, section 1474 et seq.

I think that the appellant in this case did not secure a fair trial under the facts contained in this record. Every criminal, regardless of guilt, or the character of the crime with which he is charged, or of which in fact he may be guilty, is entitled to a fair trial. In Fisher v. State, 145 Miss. 116, 110 So. 361, it was said: ''While no

precise definition can be given defining what a 'fair trial' is, it must be one where the accused's legal rights are safeguarded and respected. There must . . . be a fair and impartial jury and a learned judge to instruct the jury and pass upon the legal questions.''

Can it be said that the legal rights of the accused are safeguarded and respected, when such damaging evidence, as a plea of guilty, is unlawfully admitted, and where damaging statements of fact are made by counsel in argument, which are not contained in the record, or supported by any inference drawn from the record? I think not. To affirm this case is to deny appellant the benefit of a trial by jury on competent evidence.